Aaron R. ETTELMAN

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 16, 2014.

Decided June 5, 2014.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellant.

Charles G. Nistico, Media, for appellee.

BEFORE: PELLEGRINI, President Judge, and SIMPSON, Judge, and COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDOT) appeals from an order of the Court of Common Pleas of Chester County (trial court) sustaining the appeal of Aaron R. Ettelman (Licensee) from a one-year suspension of his operating privilege for refusing to submit to chemical testing in connection with his arrest for violating Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802 (relating to driving under the influence (DUI) of alcohol or controlled substance).[1] For the reasons that follow, we reverse the trial court.

On January 12, 2013, a police officer of the East Brandywine Township Police Department stopped Licensee's vehicle in the 1200 block of Horseshoe Pike. After approaching the driver's side of the vehicle, the police officer detected the odor of alcohol emanating from the vehicle and asked Licensee if he had been drinking. Licensee admitted that he had been drinking, and the police officer administered three field sobriety tests, which Licensee failed to perform correctly. After failing to perform a sufficient breath test, the police officer placed Licensee under arrest for suspicion of DUI and transported him to Brandywine Hospital. At the hospital, Licensee refused to undergo chemical testing.

On February 1, 2013, Licensee received notice from PennDOT that his operating privilege was suspended for a period of one year, effective March 8, 2013, pursuant to Section 1547(b)(1)(i) of the Vehicle Code for refusal to submit to chemical testing. Licensee appealed to the trial court.

At the hearing, the police officer testified that while traveling east on Horseshoe Pike at approximately 1:30 a.m. on January 12, 2013, he observed a westbound vehicle passing him that did not have its taillights activated, so he turned his vehicle around and initiated a traffic stop. According to the police officer, he advised Licensee that he stopped him because his vehicle's taillights were not working, to which Licensee responded that his vehicle had automatic lights. The police officer stated that he then noticed that the switch in Licensee's vehicle was set to the automatic daytime running lights, which he explained was the reason that Licensee's taillights were not working. After determining that there were no outstanding warrants for Licensee, the police officer testified that he returned to Licensee's vehicle and detected the odor of alcohol. He testified that he administered three field sobriety tests, which Licensee failed

---

1. Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), provides:

   (b) **Suspension for refusal.—**
   (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
   (i) Except as set forth in subparagraph (ii), for a period of 12 months.

to perform correctly, and then asked Licensee to submit to a portable breath test. The police officer testified that he gave Licensee three chances to give a sufficient breath test, but Licensee was uncooperative, blowing through his nose instead of through his mouth. He testified that he then placed Licensee under arrest for suspicion of DUI and transported him to the hospital, where he read Licensee the implied consent form "word for word" and advised him that it would be in his best interests not to refuse chemical testing. (April 11, 2013 Hearing Transcript at 8). However, according to the police officer, Licensee repeatedly refused to undergo chemical testing. On cross-examination, the police officer admitted that the affidavit of probable cause did not reference the conversation he had with Licensee about the light switch in his vehicle or Licensee's alleged refusal to submit to chemical testing at the hospital.

Licensee testified that his vehicle's headlights were "definitely" on, explaining that "[i]t was one of the foggiest nights I remember ... [a]nd if I did not have my headlights on, I would not have been able to see adequately." (*Id.* at 20). He further explained that "when the headlights are on, the taillights are on." (*Id.*) Licensee denied purposefully blowing through his nose when taking the breath test. He testified that after being placed under arrest, he did not recall the police officer asking him to sign anything, reading him any forms or telling him that his license was going to be suspended. Licensee explained:

> The only thing I was told is that I had to submit to chemical testing. I was told twice, you have to submit to chemical testing, which I was under the impression I had through the breathalzyer....

I don't recall anything about a 12 month mandatory suspension of my license.... [I]f I had known that not giving blood in addition to the breathalyzer would result in a 12 month automatic suspension, there's no way I would have refused. (*Id.* at 25).

By order dated April 11, 2013, the trial court denied Licensee's appeal. Licensee did not file a motion for reconsideration or appeal the trial court's order. On July 17, 2013, Licensee sent a letter to the trial court enclosing a video of the January 12, 2013 traffic stop, which allegedly showed that the taillights of Licensee's vehicle were on when the police officer initiated the traffic stop. The trial court informed Licensee that it would consider his July 17, 2013 letter as a request for reconsideration *nunc pro tunc*. After PennDOT's counsel objected, Licensee's counsel submitted a memorandum of law to the trial court in support of the granting of a motion for reconsideration or, in the alternative, requesting that the trial court consider Licensee's July 17, 2013 letter as a writ of *audita querela*.[2]

On October 10, 2013, the trial court reconvened the hearing, at which Licensee presented the video of the January 12, 2013 traffic stop and provided additional testimony. PennDOT argued that the trial court no longer had jurisdiction and that Licensee could have discovered the video in time for the initial hearing if he had acted with reasonable diligence. The trial court subsequently issued an order dated October 17, 2013, granting a writ of *audita querela* and sustained Licensee's appeal of the suspension. In its subsequent opinion, the trial court explained:

> While the circumstances surrounding the traffic stop are not determinative in

---

2. *Audita querela* is defined as "[a] writ available to a judgment debtor who seeks a rehearing of a matter on grounds of newly discovered evidence or newly existing legal defenses." BLACK'S LAW DICTIONARY 150 (9th ed. 2009).

this, a refusal case, they do bear mightily in my assessment of the relative credibility in this, a two-witness case. . . .

I have now, in a hearing held on October 10, 2013, viewed the after-discovered video tape and it is clear that the tail lights are on and brighten greatly when [Licensee] applied his brakes and pulled over. . . . Accordingly, if the after-discovered video had been a part of my record on April 11, 2013, I would have found in favor of [Licensee] and sustained the appeal and rescinded the suspension.

(Trial Court's November 7, 2013 Opinion at 2–3). This appeal by PennDOT followed.[3]

On appeal, PennDOT initially contends that the trial court erred as a matter of law in reconvening Licensee's hearing over the license suspension because it had lost subject matter jurisdiction. Section 5505 of the Judicial Code, 42 Pa.C.S. § 5505, relating to modification of orders, provides:

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

Pursuant to that section, "[a] tribunal loses jurisdiction to change an order once it becomes final; otherwise, nothing would ever be settled. . . . Absent a specific rule or statute, the only exception is to correct obvious technical mistakes (e.g., wrong dates) but no substantive changes can be made." *City of Philadelphia Police Department v. Civil Service Commission*, 702

A.2d 878, 880 (Pa.Cmwlth.1997) (citations omitted). As this Court has explained:

The judicial system cannot countenance attempts to extend or renew litigation after a matter has been adjudicated and finally determined by an order no longer subject to reconsideration, reargument or appeal. The finality of an unappealed order rests on the principle that, after parties have been afforded an adequate opportunity to present their claims, litigation must come to an end. Where no appeal has been taken, even the issuing court loses the power to change its determination after the passage of thirty days from entry of the order. 42 Pa. C.S. § 5505. And that finality applies not only to claims that have been raised, but also to those which . . . could have been raised.

*Department of Transportation, Bureau of Motor Vehicles v. Kosak*, 162 Pa.Cmwlth. 505, 639 A.2d 1252, 1257 (1994).

In this case, the trial court entered a final order on April 11, 2013, but Licensee did not ask for reconsideration until four months later when he sent the trial court a letter (which Licensee never formally filed with the trial court). We agree that the trial court loses jurisdiction after 30 days of entry of the order and could not reverse or modify an order just because it believed that there were substantive defects in its reasoning or its remedy was too harsh or too lenient. However, the license suspension proceeding was not before the trial court.

What was before the trial court was a request to reopen the judgment because of after-discovered evidence, i.e., a writ of *audita querela*, which is Latin for

---

3. Our review is limited to determining whether the trial court's findings are supported by substantial evidence, whether errors of law have been committed or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Lanthier v. Department of Transportation, Bureau of Driver Licensing*, 22 A.3d 346, 350 n. 5 (Pa.Cmwlth. 2011).

"the complaint having been heard" and permits a defendant who has had a judgment rendered against him to seek relief from the consequences of such a judgment where there is some new evidence not previously available and carrying out the judgment would be contrary to justice. While it appears that the writ of *audita querela* has not been abolished in the Commonwealth,[4] our Supreme Court has held that "[w]herever audita querela would have been available at common law, as a general rule, relief may now be obtained on motion, ... [and] ordinarily the better practice is to proceed by way of motion upon notice to the adverse party." *German Trust Company of Davenport, Iowa v. Plotke*, 274 Pa. 483, 118 A. 508, 510 (1922).

In this case, Licensee failed to satisfy the requirements for the granting of a writ of *audita querela* or the modern equivalent of a motion to open judgment on the basis of after-discovered evidence. Ignoring that no motion or writ was ever filed and that the letter sent to the trial judge was never made part of the certified record, "[i]t is long settled that a petition to re-open judgment ... on the basis of after-discovered evidence, will only be granted where that evidence: (1) is new; (2) could not have been obtained at trial in the exercise of due diligence; (3) is relevant and non-cumulative; (4) is not for the purposes of impeachment; and (5) must be likely to compel a different result." *A.G. Cullen Construction, Inc. v. State System of Higher Education*, 898 A.2d 1145, 1167 (Pa.Cmwlth.2006) (citing *In re Cook*, 107 Pa.Cmwlth. 207, 527 A.2d 1115, 1116 (1987)).

Here, the only purpose of the traffic stop video, which was the trial court's reason for granting the writ, was to impeach the police officer's credibility. As stated above, such evidence is not sufficient to warrant the opening of the judgment. Moreover, the traffic stop video is not "after discovered" evidence. At the April 11, 2013 hearing, the following exchange occurred between Licensee's counsel and the police officer:

[Counsel]: The traffic stop in this case, there is an audio and video recording of that?

[Police Officer]: Yes, sir.

(April 11, 2013 Hearing Transcript at 13). It is apparent from that exchange that Licensee became aware of the existence of the video, at the latest, on April 11, 2013. Therefore, the video was not new and Licensee arguably could have obtained it had he exercised due diligence. Even assuming that Licensee exercised due diligence yet was still unable to obtain the video until July 2013, his inability to obtain the video until then in no way prevented him from timely filing an appeal or motion for reconsideration and then requesting a continuance.

Accordingly, the order of the trial court is reversed and the license suspension is reinstated.

### ORDER

AND NOW, this *5th* day of *June*, 2014, the order of the Court of Common Pleas of Chester County dated October 17, 2013, at

---

4. "Every court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general rules, every court shall have power to make such rules and orders of court as the interest of justice or the business of the court may require." 42 Pa.C.S. § 323. *See also* 42 Pa.C.S. § 912 (relating to powers of courts of common pleas).

No. 2013–01171–LS, is reversed and the license suspension is reinstated.