# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara L. Yoder and Joseph I. Yoder, :
individually and as Trustees of the :
Yoder Family Trust No. 2 and :
Hardwood Mill Trust, :
                      Appellants    :    No. 1956 C.D. 2015
                                      :    Submitted: April 1, 2016
          v.                 :
                                        :
Sugar Grove Area Sewer Authority    :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                 **FILED: June 3, 2016**

        Barbara L. Yoder and Joseph I. Yoder, individually and as Trustees of the Yoder Family Trust No. 2 and Hardwood Mill Trust (Owners) appeal from an order of the Court of Common Pleas of the 37th Judicial District (Warren County Branch) (trial court) that denied preliminary injunctive relief and required connection to the Sugar Grove Area Sewer Authority (Authority) sewer system in a manner at the Authority's sole discretion. Owners argue the trial court previously ordered the manner of connection was to be the least intrusive to their religion. Thus, the trial court improperly modified a final order. Owners also assert the trial court erred in not considering all of the elements for a preliminary injunction. Upon review, we vacate the trial court's order and remand the matter for further findings in accordance with the following opinion.

## I. Background

Owners maintain a residence in Sugar Grove Township (Township) which is subject to a mandatory connection ordinance, Ordinance No. 04-06-15 (Ordinance). Pursuant to the Ordinance, every owner whose property abuts any sewer system constructed by the Authority, shall connect, at the owner's cost, any structures located on the property that are occupied or intended for human occupancy. Owners' property is subject to the Ordinance.

Owners are Old Order Amish. One of the tenets of their religion is to disavow the use of electricity. As a result, Owners service their property with an old-fashioned privy (outhouse) that is not served by running water or electricity.

In an effort to accommodate Owners' religion, in April 2008, the parties entered into a Sewage Services Agreement (Agreement). The Agreement allowed Owners to utilize the privy as long as they paid the connection fee, past due sewer charges and future monthly charges, and disposed of the waste of their privy at least once a year into the Authority's pumping station. Owners abided by the Agreement until December 2010, when the Authority filed a municipal claim against them for nonpayment of sewer charges. The Authority also filed a private criminal complaint against Owners before a magisterial district judge, on which it prevailed. After a *de novo* hearing on the summary appeal, the trial court found Owners guilty of violating the Ordinance. Owners appealed to this Court, and we affirmed. See Commonwealth v. Yoder (Pa. Cmwlth., No. 229 C.D. 2012, filed January 4, 2013) (unreported).

The Authority also sought relief through a separate civil suit, docketed in the trial court as No. 191 of 2012. There, the Authority filed a complaint alleging breach of the Agreement and seeking injunctive and declaratory relief to compel Owners to connect to the system. The Authority also requested that Owners be removed from the property to enable the Authority to connect the property in a manner it deemed fit. Owners filed an uncounseled response, to which the Authority objected. The Authority then filed a motion for judgment on the pleadings. After argument, the trial court directed the parties[1] to brief the issue.

Thereafter, the trial court entered judgment in the Authority's favor as to its request for injunctive relief requiring mandatory connection. However, the trial court denied the Authority's request to compel Owners to vacate their property to allow connection in a manner the Authority deemed fit. The trial court directed Owners to connect to the sewer system; in the event they did not, the trial court authorized the Authority to "enter the property … and connect the dwelling to the [Authority's] sewer system, at [Owners'] expense." Reproduced Record (R.R.) at 21a-22a (Tr. Ct. Order dated November 26, 2013 (2013 Order)). Relevant here, paragraph 5 of the 2013 Order provided: "[The Authority] shall, in the process of connecting the property to the sewer system, take due care as to [Owners'] religious convictions, and shall proceed in a manner so as to pose the least possible intrusion on [Owners'] religious convictions and beliefs." Id. (emphasis added). Significantly, because the trial court granted judgment on the pleadings, it did not hold a hearing or receive any evidence.

---

[1] At this point, Owners obtained representation from the American Civil Liberties Union.

The trial court reasoned that the interest in protecting public health through a sewer connection outweighed Owners' free exercise rights. Nevertheless, the trial court recognized Owners' religious convictions, and required the connection to be made in accordance with them. The trial court based its decision in part on an opinion issued in a declaratory judgment case brought as a class action by the Old Order Amish, including Owners, challenging enforcement of the Ordinance as to them.

The current litigation stems from disagreements regarding the means of accomplishing Owners' connection to the sewer system. Counsel for the Authority sent a letter to Owners' counsel in September 2014 advising that Owners must "open an account with Penelec [the electricity provider] for the purpose of servicing the grinder pump for their property." R.R. at 23a (Letter). As such, the Authority determined electricity was necessary in order to connect the property to the sewer system. In response to the Letter, Owners filed a petition for preliminary injunctive relief. In its response to the petition, the Authority asked the trial court to direct Owners to open an account with Penelec.

The trial court held two days of hearings. Joseph Yoder (Yoder) testified regarding Owners' religious objection to opening an electricity account, and to having electricity used to power anything associated with the use of their privy. He testified they would not be able to use the privy if it were tainted with the use of electric power or risk excommunication. Yoder also objected to the connection generally and the payment of fees associated with connection.

4

The Authority presented the lay testimony of Harold Bloomgren, Jr. about implementing Act 537 Plans under the Sewage Facilities Act,[2] and related financing. The Authority also presented testimony of its Sewage Enforcement Officer Todd Fantaskey (SEO), and Joseph Roddy (Engineer) as sewer system experts.

SEO testified generally regarding the effect of wastewater on public health and the surrounding water table. He believed he witnessed the dumping of wastewater on Owners' property. However, he could not confirm that because he did not take a sample. R.R. at 219a. SEO opined that mandatory connection would best protect the public health against the risks posed by Owners' privy.

Engineer testified regarding connection options. He explained that gravity and grinder pump systems differ in that grinder pumps are operated by electricity and gravity systems are more expensive to install. R.R. at 232a ("it really boils down to the cost is why you go with a pressure [pump] system."). He noted solar power was possible, and with sufficient funds, a pump could be designed to operate without electricity. Id. at 236a. He could not recall whether the Authority consulted Owners about placing the pump in the right-of-way instead of on their property. However, he said "it wouldn't be an easy job." Id. at 237a.

Based on the evidence presented at the hearings,[3] the trial court denied the preliminary injunction. Specifically, the trial court ordered:

---

[2] Act of January 24, 1966, P.L. (1965) 1535, as amended, 35 P.S. §§750.1-750.20a.

[3] Although the trial court considered the record in No. 191 of 2012, the cases are not consolidated.

(1) [The Authority] may connect [Owners'] premises to [the Authority's] sewer system in a manner that shall be at the [the Authority's] sole discretion and at [Owners'] sole expense. **This Order supersedes Paragraph 5 of the [2013 Order] at Docket No. 191 of 2012**.

(2) [Owners] shall not be compelled to open an account with Penelec or any other provider for the electrical service necessary for the installation, operation, or maintenance of the sewer connection. [The Authority] may, however, charge and invoice [Owners] for any electricity charges required for said purposes.

Appellants' Br. at 2 (2015 Order) (bold added).

Owners appealed to the Superior Court, which transferred the matter to this Court. The trial court stayed its order pending appeal. Subsequently, the trial court issued an opinion under Pa. R.A.P. 1925(a).[4]

In its opinion, the trial court construed the litigation as petitions to enforce the 2013 Order. It found the Authority explored "all possible alternatives to a conventional hook-up." R.R. at 300a. Emphasizing the Authority's attempts to work with Owners, the trial court stated there were no less restrictive means of connection because "[Owners] reject the use of electricity, pressurized systems, and live too far away from a sewage treatment plant to use gravity systems." Id. It noted the privy posed a significant risk to public safety because Owners live on elevated land where there is substantial running groundwater, and the individual on-lot sewage system failure rate was very high. Accordingly, the trial court permitted a conventional connection with an electrical grinder pump.

---

[4] The trial court included docket number 191 of 2012 on the caption of its opinion.

6

As to the alleged modification of its 2013 Order, the trial court explained the circumstances here met the extraordinary circumstances standard.[5] It noted the repeated litigation involving largely the same issue, and that more than a year elapsed since the issuance of its 2013 Order, and failure of Owners to connect during that time. Thus, to the extent the 2015 Order may be deemed a modification, the trial court found the circumstances here warranted it.

In addition to the litigation resulting in the 2013 and 2015 Orders, Owners, in their individual capacities, are also members of a class action declaratory judgment lawsuit challenging enforcement of the Ordinance against Old Order Amish in the Authority's service area. Against this backdrop, we consider Owners' appeal from the 2015 Order.

## II. Discussion

On appeal, Owners assert the trial court erred as a matter of law in modifying the 2013 Order with the 2015 Order, because it was beyond the 30-day period in which a trial court is permitted to modify an order under Section 5505 of the Judicial Code, 42 Pa. C.S. §5505. Owners also challenge the trial court's evidentiary rulings to preclude legislative history regarding religious exercise. Further, Owners contend the trial court erred in neglecting to analyze the elements of a preliminary injunction, seeking to maintain the status quo of an order requiring connection by a means with the least impact on their religious freedom.

---

[5] A court may modify an order if extraordinary circumstances exist, which include fraud, a breakdown in court operations, or abuse of the system, or compelling, grave circumstances necessitating intervention. First Union Mortg. Corp. v. Fempong, 744 A.2d 327, 334 (Pa. Super. 1999) (citing Estate of Gasbarini v. Med. Ctr. of Beaver Cnty., Inc., 409 A.2d 343 (Pa. 1979)).

## A. 2013 Order

Pursuant to Section 5505 of the Judicial Code, "[e]xcept as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry ... if no appeal from such order has been taken or allowed." 42 Pa. C.S. §5505. However, after 30 days, the order becomes final and may not be altered by the trial court except in extraordinary circumstances. Such circumstances include fraud or another circumstance that is "so grave or compelling as to constitute extraordinary cause justifying intervention by the court." Board of Sup'rs v. Quarture, 603 A.2d 295, 298 (Pa. Cmwlth. 1992) (quoting Simpson v. Allstate Ins. Co., 504 A.2d 335, 337 (Pa. Super. 1986)).

That the trial court amended the 2013 Order beyond the 30-day period is evident. This dispute centers on whether the language in the 2015 Order constitutes a modification of the 2013 Order, and if so, whether the modification is warranted by the circumstances. The 2015 Order expressly "supersedes Paragraph No. 5 of the [2013 Order]." Paragraph 5 of the 2013 Order pertained to the Authority's obligation to connect Owners to the sewer system "in a manner so as to pose the least possible intrusion on [Owners'] religious convictions and beliefs." R.R. at 22a. By contrast, the 2015 Order permits the Authority to connect Owners in a manner at its "sole discretion," which involves the use of electricity. 2015 Order.

The Authority asserts the trial court merely clarified the 2013 Order, which is within its authority. Owners argue the trial court's 2015 Order is improper to the extent it supersedes the 2013 Order. First, we consider whether the 2015 Order constitutes a modification or a clarification of the 2013 Order.

8

## 1. Modification or Clarification

Courts may be permitted to modify or rescind orders "beyond the normal time limits and tak[e] other corrective measures in cases where it would have been inequitable for parties to suffer consequences of the court's errors." Ainsworth v. Dep't of Transp., Bureau of Driver Licensing, 807 A.2d 933, 937 (Pa. Cmwlth. 2002) (quoting Jackson v. Hendrick, 746 A.2d 574, 576 (Pa. 2000)). "In this regard, the exceptions are similar to the power of the court to grant a *nunc pro tunc* appeal under limited circumstances when otherwise it would lack jurisdiction over that appeal." Id.

The Authority cites Retenauer v. Flaherty, 642 A.2d 587 (Pa. Cmwlth. 1994), to support its argument that the 2015 Order did not modify the 2013 Order. In Retenauer, the trial court ordered relief in a wrongful termination suit. The order provided for reinstatement, back wages and reinstatement of benefits, as well as costs of litigation. However, the order did not specify which defendant, the City or officials named in their individual capacities, were responsible to pay the damages. Retenauer, the party to whom payment was owed, filed a motion to assume jurisdiction to allow the trial court to clarify who was responsible, and in what amounts. That issue remained unresolved, although the amount of damages was determined. The trial court assumed jurisdiction to allocate its damages award.

Retenauer is distinguishable from the circumstances here. The initial order in Retenauer was unenforceable in that it did not specify which of the defendants bore the obligations created by the order. Thus, the prevailing party was left without a remedy. That is a defect on the face of the order.

9

By contrast, here, the trial court's 2013 Order was final and enforceable on its terms. Indeed, the 2013 Order set forth the responsibilities of both parties, obligating the Authority to use the least restrictive means to accomplish connection. In Owners' view, that means would eschew the use of electricity, which the trial court recognized was contrary to their religious beliefs. There was no apparent defect in the 2013 Order necessitating clarification.

Assuming, for argument's sake, that the trial court's neglect in specifying the mechanism for connection was a defect in the 2013 Order, the 2015 Order did not remedy that defect. Like the 2013 Order, the 2015 Order does not specify the means of connection. Such specification (were there any) may be classified as a clarification. That is not the case here. Rather, the 2015 Order states the connection shall be at the Authority's sole discretion.

This Court consistently holds a trial court may not change a final order, "the only exception is to correct obvious technical mistakes (e.g., wrong dates) but no substantive changes can be made." Ettelman v. Dep't of Transp., Bureau of Driver Licensing, 92 A.3d 1259, 1262 (Pa. Cmwlth. 2014) (quoting City of Phila. Police Dep't v. Civil Serv. Comm'n, 702 A.2d 878, 880 (Pa. Cmwlth. 1997)); see also Hill v. Zoning Hr'g Bd. of Nether Providence Twp. __ A.3d __, (Pa. Cmwlth., No. 933 C.D. 2015, filed March 10, 2016), 2016 WL 913149. A trial court is not permitted to later reopen a litigation on a party's request "just because it believed that there were substantive defects in its reasoning or its remedy was too harsh or too lenient," even after hearing additional evidence. Ettelman, 92 A.3d at 1262 (reversing trial court's rescission of earlier decision).

10

The 2013 Order required the Authority to employ the "least intrusive" mechanism to achieve mandatory connection. R.R. at 22a. The trial court rescinded that requirement in the 2015 Order, leaving the mechanism up to the Authority. Notably, in its 1925(a) opinion, the trial court explained the connection required by the 2013 Order could be accomplished "by a conventional connection to [Owners'] privy with an electrical grinder pump." Tr. Ct., Slip Op., 4/8/15, at 6. That constitutes a substantive change as opposed to a clerical correction that may be permissible after the 30-day appeal period.

Inclusion of the "least intrusive" manner of connection in the 2013 Order may have affected Owners' decision not to appeal the order. Conversely, the Authority did not timely appeal the 2013 Order and its "least intrusive" manner of connection requirement. That requirement is now final. The trial court's 2015 Order constitutes a substantive modification of the 2013 Order that is impermissible absent extraordinary circumstances.

## 2. Extraordinary Circumstances

Next, we consider whether the trial court's modification of the 2013 Order falls into one of the exceptions to the rule against changing a final order.

"'Extraordinary cause' refers to an oversight or action on the part of the court or the judicial process which operates to deny the losing party knowledge of the entry of final judgment so that the commencement of the running of the appeal time is not known to the losing party." Hill, __ A.3d __, __, Slip Op. at 12, 2016 WL 913149, at *15 (quoting Mfrs. & Traders Trust Co. v. Greenville

11

Gastroenterology, SC, 108 A.3d 913, 919 (Pa. Super. 2015)). Reasons warranting a trial court's intervention relate to procedural infirmities or extrinsic fraud, not to changed circumstances or second-guessing the outcome. Ettelman.

Here, the trial court cites "the public health and safety concerns and [Owners'] attempts to delay enforcement …" as extraordinary circumstances. Tr. Ct., Slip. Op., at 7. The trial court considers Owners' request for preliminary injunctive relief as an attempt to delay enforcement and refusal to cooperate with the mandatory connection ordered in the 2013 Order. These do not constitute the types of circumstances that permit rescission of an earlier final order. That is because these reasons do not relate to procedural infirmities or extrinsic fraud. Ettelman. Therefore, the trial court's substantive modification of the 2013 Order in the 2015 Order is vacated, and Paragraph 5 of the 2013 Order is reinstated.

### B. Evidentiary Rulings

Owners also cite the trial court's rulings excluding evidence regarding various religious laws as grounds for reversal. Owners' arguments in this regard lack merit.

"The admission or exclusion of evidence is within the sound discretion of the trial court, whose decision will not be disturbed absent a clear indication of abuse of that discretion." Lehigh-Northampton Airport Auth. v. Fuller, 862 A.2d 159, 168 (Pa. Cmwlth. 2004); see also James Corp. v. N. Allegheny Sch. Dist., 938 A.2d 474 (Pa. Cmwlth. 2007). An abuse of discretion is the exercise of judgment that is manifestly unreasonable, arbitrary or capricious,

12

misapplies the law, or is the result of bias, prejudice or ill will. James Corp. Further, "[t]o constitute reversible error, a ruling on evidence must be shown not only to have been erroneous[,] but harmful to the party complaining." Fuller, 862 A.2d at 168 (quoting Hart v. W.H. Stewart, Inc., 564 A.2d 1250, 1252 (Pa. 1989)).

On the second day of hearings, Owners attempted to create a record on cross-examination of the Authority's witnesses regarding laws protecting religious freedom.[6] See R.R. at 143a-44a, 204a-05a. Essentially, Owners' counsel asked Authority witnesses about their familiarity with these statutes. It is unclear that such evidence was relevant to determining the least intrusive means of connection. Further, we agree with the trial court that the application of such laws is not a matter of fact to be elicited through fact witnesses. Moreover, the trial court heard evidence regarding Owners' religious beliefs in their case in chief. Thus, we discern no abuse of discretion by the trial court in excluding this evidence.

## C. Elements for Preliminary Injunctive Relief

Lastly, Owners argue the trial court erred as a matter of law in denying their petition for a preliminary injunction without analyzing the six prerequisites for relief.

A preliminary injunction may be granted if the petitioner shows the following prerequisites:

---

[6] See Religious Freedom Restoration Act, 42 U.S.C. §2000bb; Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §200cc; and, the Religious Freedom Protection Act, Act of December 9, 2002, P.L. 1701, as amended, 71 P.S. §§2401-2407.

(1) [necessity] to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

(2) that greater injury would result from refusing an injunction than from granting it …;

(3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

(4) … that its right to relief is clear, and that the wrong is manifest, or … that it is like[ly] to prevail on the merits;

(5) that the injunction it seeks is reasonably suited to abate the offending activity; and,

(6) that a preliminary injunction will not adversely affect the public interest.

Greater Nanticoke Area Educ. Ass'n v. Greater Nanticoke Area Sch. Dist., 938 A.2d 1177, 1183-84 (Pa. Cmwlth. 2007). An extraordinary remedy, "[a preliminary injunction] is to be granted only when and if each criteria has been fully and completely established." City of Phila. v. Com., 922 A.2d 1, 9 (Pa. Cmwlth. 2003).

On appeal from a denial of a preliminary injunction, our review "is limited to determining whether the record reflects any apparently reasonable grounds for the trial court's action." Norristown Mun. Waste Auth. v. W. Norriton Twp. Mun. Auth., 705 A.2d 509, 511 (Pa. Cmwlth. 1998). "'Apparently reasonable grounds' exist to support a lower court's denial of injunctive relief where the lower court has properly found that any one of the six 'essential prerequisites' for a preliminary injunction is not satisfied. SEIU Healthcare Pa. v. Com., 104 A.3d 495, 501 (Pa. 2014) (citation omitted) (reversing denial of preliminary injunction where clear right existed). An appellate court will interfere with the decision of the trial

14

court only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was "palpably erroneous" or misapplied. Summit Towne Ctr. v. Shoe Show of Rocky Mount, Inc., 828 A.2d 995, 1000 (Pa. 2003). However, where the rule of law relied upon is palpably erroneous, the preliminary injunction will be vacated. Big Bass Lake Cmty. Ass'n v. Warren, 950 A.2d 1137, 1144 (Pa. Cmwlth. 2008).

Here, the trial court considered only the clear right to relief element, looking "no further." Tr. Ct., Slip Op., at 7. Significantly, the trial court explained Owners did not satisfy the clear right prerequisite because they "*already lost on the merits*." Id. (emphasis in original). In ruling that the prior litigation resolved the "clear right" issue in the Authority's favor, the trial court erred.

While Owners came before the trial court in various capacities related to their noncompliance with the Ordinance, the issue before the trial court in the proceeding currently under review is limited. Owners sought preliminary injunctive relief in response to a directive by the Authority's counsel to contact Penelec to open an account for electricity. Owners sought immediate injunctive relief from an electric-dependent connection. The use of electricity was the harm to be enjoined.

The trial court erred in framing the harm to be enjoined as the mandatory nature of connection. That issue was resolved in the Authority's favor in prior proceedings. The only detail unresolved by the 2013 Order was the means of connection. That part of the 2013 Order was entered in Owners' favor.

15

Paragraph 5 of the 2013 Order conferred a clear right upon Owners to be connected to the sewer system by the least restrictive means, accounting for their religious beliefs that do not countenance the use of electricity.

Here, the trial court erred as a matter of law in determining Owners were unable to establish a right to relief because they lost on the merits of the mandatory connection issue. These are two separate actions, seeking different remedies. In 191 of 2012, the Authority sued Owners to require a connection under the Ordinance. Owners defended based on their religious beliefs. The trial court balanced religious freedom against the public health interest in connection, resolving it in favor of connection. In 507 of 2014, Owners sued the Authority contending it was not compliant with the 2013 Order in that it was requiring the use of electricity to accomplish the connection. However, the trial court did not consider the harm of an electric connection against non-electric alternatives.

The trial court's analysis regarding the threat to public safety pertained to the lack of *any* sewer connection at all, not a connection by non-electric means, or, failing that, electricity generated by natural, non-electricity provider means. Importantly, the trial court also did not address Owners' alleged clear right to the least intrusive means of a mandatory connection.

From our review of its opinion, we are unable to glean the trial court's findings regarding the prerequisites for injunctive relief based on the alleged harm. Therefore, we vacate and remand to the trial court to make appropriate findings. See Lindeman v. Borough of Meyersdale, 131 A.3d 145 (Pa. Cmwlth. 2015). The

16

trial court should assess whether the use of electricity, which is offensive to the Old Order Amish beliefs, constitutes the least intrusive means of accomplishing connection in accordance with the 2013 Order, and, in particular, evaluate the necessity for installation of electric service on Owners' property.

## D. Counsel Fees

The Authority also filed a petition for counsel fees pursuant to Pa. R.A.P. 2744, alleging Owners engaged in dilatory and vexatious conduct. Discerning no dilatory or vexatious conduct here, and in light of our disposition, we deny the petition.

Rule 2744 allows an appellate court to award: (1) a reasonable counsel fee; and, (2) damages for delay at the rate of 6% per annum in addition to legal interest. Pa. R.A.P. 2744. This Court may award such fees and damages when we determine "an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Thunberg v. Strause, 682 A.2d 295, 302 (Pa. 1996). An appeal is "frivolous" if the appellate court determines the appeal lacks any basis in law or in fact. Id. (citations omitted).

In support of its petition the Authority cites the numerous suits in which Owners were parties. That Owners have been parties to a number of other suits involving sewer connection is not indicative of vexatious conduct. In the first action, Owners were defendants to private criminal complaints attempting to collect sewer fees. In the second action, Owners were again defendants in a civil

17

suit in which the Authority sought injunctive relief to compel their connection to the sewer system. That litigation resulted in the 2013 Order, which accounted for Owners' religious beliefs. The third action is before us for disposition. The Authority characterizes Owners' request for reconsideration and for stay related to this appeal as vexatious.

Zealous advocacy on behalf of a position is not tantamount to vexatious conduct warranting fees. That arguments are ultimately unavailing does not, by itself, warrant imposition of fees. See McCann v Unemployment Comp. Bd. of Review, 756 A.2d 1 (Pa. 2000) (reversing Commonwealth Court's grant of fees, because party entitled to raise alternative arguments, even if ultimately not supported).

Moreover, Owners' appeal was not frivolous. Owners' appeal did not lack any basis in law or fact. We discern merit in Owners' argument that the trial court erred in modifying the 2013 Order without extraordinary cause. Additionally, we are persuaded that the trial court erred in finding the result of the prior litigation precluded Owners from articulating a clear right to relief from an electric connection.

## III. Conclusion

For the foregoing reasons, the trial court's 2015 Order is vacated and paragraph 5 of the 2013 Order is reinstated. Further, we remand the matter on the existing record for findings and an explanation of the elements required for injunctive relief based on the alleged harm of requiring the use or installation of

18

electric service to accomplish the mandatory connection. In addition, as the appeal is not frivolous, we deny the Authority's petition for counsel fees and costs.


_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara L. Yoder and Joseph I. Yoder, :
individually and as Trustees of the :
Yoder Family Trust No. 2 and :
Hardwood Mill Trust, :
                     Appellants :    No. 1956 C.D. 2015
                                  :
           v. :
                                  :
Sugar Grove Area Sewer Authority : 

## O R D E R

**AND NOW**, this 3rd day of June, 2016, the order of the Court of Common Pleas of the 37th Judicial District (Warren County Branch) (trial court) dated January 26, 2015, is **VACATED** and the matter is **REMANDED**. Accordingly, the portion of the Order dated November 26, 2013 is reinstated. The matter is remanded to the trial court for further findings on the existing record consistent with this opinion.

Further, Sugar Grove Area Sewer Authority's petition for counsel fees and costs pursuant to Pa. R.A.P. 2744 is **DENIED**.

Jurisdiction is relinquished.

                        _____
                        ROBERT SIMPSON, Judge