Harold Lindeman, Jamie Livengood : 
and Matthew Beeman :
: No. 2063 C.D. 2014
v. :
: Submitted: November 16, 2015
The Borough of Meyersdale, :
Somerset County, :
Appellant :

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION BY
JUDGE McCULLOUGH                    FILED:  December 30, 2015


The Borough of Meyersdale (Borough) appeals from the October 7, 2014 order of the Court of Common Pleas of Somerset County (trial court), granting the petition of Harold Lindeman, Jamie Livengood, and Matthew Beeman (collectively, Petitioners) for a preliminary injunction and enjoining the Borough from moving forward on an accepted bid for the collection of municipal waste.

**Facts and Procedural History**

The parties have stipulated to the pertinent facts in this matter.  For the past 21 years, Harbaugh Trucking, Inc. (Harbaugh) was the exclusive garbage hauler, both residential and commercial, for the Borough.  The Borough's last contract with Harbaugh was set to expire on October 31, 2014.  In early 2014, the Borough issued a request for proposal (RFP) seeking bids for the collection and disposal of garbage,

ash, and rubbish for the entire Borough for the period from November 1, 2014, through October 31, 2017. In July 2014, the Borough issued an amended RFP which adjusted yardage specifications and included new dates for the bid deadline and the opening of the bids. The RFP included proposal guidelines that required all costs to be "itemized to include an explanation of all fees and costs" and reserved the Borough's right "to reject any or all of the bids received and to waive informalities and minor irregularities in proposals received." (Reproduced Record (R.R.) at 47-48.)[1] The RFP also stated that "[t]he award will be made to the responsible and qualified offeror whose proposal, conforming to the invitation, will be most advantageous to the Township [sic] in price for the services and other factors considered." (R.R. at 48.)

The RFP acknowledged that the services provided by Harbaugh since 1993 had been "satisfactory with contract compliance." (R.R. at 49.) However, the RFP noted that the Borough Council believed "that an open and competitive bidding process from various vendors [was] indicated," with the goal to "provide Meyersdale residents and businesses with high quality, cost effective refuse services." *Id.* The RFP then specified that any bid must contain the following items:

> A. Detailed plan and schedule for the pick-up and disposal of garbage, ashes and rubbish to include specific days, specific locations, times, etc. To include bag/can limits per resident. To include specific requirements for bags/cans.
>
> B. Qualifications of Vendor to provide services to Meyersdale Borough to include licensing, certifications, credentials and references.

---

[1] The Borough's reproduced record does not include the lower case "a" as required by Pa.R.A.P. 2173.

C. Provide documentation certifying the vendor's right to use a solid waste or a combination of facilities which are properly licensed and approved by the state of Pennsylvania.

D. Inventory of equipment and vehicles available to be used within Meyersdale Borough to include licensing, specific type and number of equipment, specific types of vehicle, preventive maintenance plan and schedule for all equipment/vehicles.

E. Certificate of all insurance policies to include liability, auto, workmen's compensation.

F. Names, experience, certifications and qualifications of workers employed by Vendor who will be providing services to Meyersdale Borough.

G. Plan and schedule for the billing and collection of fees to residents to include sample bills, procedure for non-collection of fees.

H. Separate plan for the Borough to handle the billing and collection of fees to residents.

I. Rates per month for the following services:

Cubic yard (See attached list of business)

Residential

Residential with ashes

Business (See attached list of business)

Business with ashes (See attached list of business)

Churches (See attached list of churches)

J. Plan, procedure, schedule and rates for the removal of large bulky items, such as appliances, mattresses, furniture, etc.

K. Rates to include any increases for life of contract. As well as plan to reopen contract for price negotiations.

L. Exclusive rights franchise fee that Vendor will pay to Meyersdale Borough which will include set amount to be paid and schedule of payment.

M. Meyersdale Borough plans to include roll off dumpsters as part of this contract. We are requesting a bid for rates for roll off dumpsters be included with your bid. Rates should be listed for 10 yard, 15 yard and 30 yard dumpsters. Include weight limits for full and time limits for use. Include rates for any other size roll off dumpsters you may own.

(R.R. at 49-50.)

The Borough received five bids, including one from Harbaugh and another from Burgmeier Hauling (Burgmeier). The Borough rejected Harbaugh's as non-compliant with the RFP. Specifically, the Borough found that Harbaugh's bid did not include proper pricing or an itemized explanation of all fees and costs, did not state disposal rates for the container sizes requested in the RFP, and included disposal services that were not requested in the RFP. The Borough ultimately recognized Burgmeier as the lowest responsible bidder and awarded Burgmeier the contract.

On September 2, 2014, Petitioners, all tax-paying residents of the Borough, filed a petition for preliminary injunction with the trial court seeking to enjoin the Borough from entering into a contract with Burgmeier. Petitioners alleged that Burgmeier was not the lowest responsible bidder. The Borough filed an answer denying this allegation. The parties thereafter filed a stipulation with the trial court stating that the facts necessary to decide the case could be derived from the amended RFP and the respective bids of Harbaugh and Burgmeier. The parties also sought the permission of the trial court to forego oral argument and submit written briefs, which the trial court granted. By order dated September 26, 2014, the trial court admitted

4

the stipulation and directed the parties to file their respective briefs on or before October 1, 2014.

**Trial Court Opinion**

Following the submission of these briefs, by order dated October 7, 2014, the trial court granted Petitioners' petition for a preliminary injunction. The trial court further directed the Borough to terminate its contract with Burgmeier and to accept Harbaugh's bid.[2] In an accompanying opinion, the trial court did not address the necessary elements for a preliminary injunction, nor did the trial court explain how Petitioners satisfied these elements. Instead, the trial court began its analysis by setting forth the legal standard relative to municipal contracts and proceeded to address the substantive issues regarding the bids of Harbaugh and Burgmeier.

The trial court first noted that section 1402(a) of the Borough Code requires that all contracts in excess of $18,500.00 be awarded to the "lowest qualified and responsible bidder." 8 Pa.C.S. §1402(a). The trial court referenced the following standard, derived from our Supreme Court's decision in *Kratz v. City of Allentown*, 155 A. 116, 117 (Pa. 1931), to determine which party is the "lowest qualified and responsible bidder":

> The statute provides that municipal contracts be let to the lowest responsible bidder, but the courts have uniformly held that the question of who is the lowest responsible bidder is one for the sound discretion of the proper municipal authority, and does not necessarily mean the one whose bid on its face is lowest in dollars, but includes

---

[2] By including these directives, the trial court effectively transformed its order from one granting preliminary injunctive relief to a final order granting permanent injunctive relief.

5

financial responsibility, also integrity, efficiency, industry, experience, promptness, and ability to successfully carry out the particular undertaking, and that a bond will not supply the lack of these characteristics. At the same time, it is held that to award the contract to a higher bidder capriciously without a full and careful investigation is an abuse of discretion which equity will restrain. Where a full investigation discloses a substantial reason which appeals to the sound discretion of the municipal authorities they may award a contract to one not in dollars the lowest bidder. The sound discretion, which is upheld, must be based upon a knowledge of the real situation gained by a careful investigation.

(Trial court op. at 3) (citations omitted).

The trial court concluded that Harbaugh was a qualified and responsible bidder, noting that the record was "absolutely void of any reason why Harbaugh's bid was not accepted based on any of the factors outlined in *Kratz*" and that the RFP itself recognized that Harbaugh's performance over the years had been "satisfactory." (Trial court op. at 4.) The trial court also concluded, after reviewing the bids and conducting its own mathematical calculations, that Burgmeier's bid would cost Borough residents and businesses in excess of $100,000.00 more than Harbaugh's bid over the term of the contract. The trial court rejected the Borough's argument that Harbaugh's flat-rate bid of $10,475.00 per month in the event the Borough performs the billing was ambiguous.

Additionally, after analyzing the bids of Harbaugh and Burgmeier, the trial court concluded that the former complied with the RFP, while the latter did not. Regarding Burgmeier's bid, the trial court stated that it did not include the required documentation under Item C certifying its "right to use a solid waste or a combination of facilities which are properly licensed and approved by the state of Pennsylvania." (R.R. at 49.) Regarding Harbaugh's bid, the trial court stated that, contrary to the Borough's determination, Harbaugh included an exhibit which met the

requirements of Item M by setting forth rental charges for 4, 8, 10, 15, 20, and 30-yard dumpsters. Next, the trial court concluded that insofar as Harbaugh's bid set forth a flat-rate fee of $10,475.00 per month, it complied with the "separate plan" requirement in Item H in the event the Borough does the billing. Finally, the trial court concluded that Harbaugh's bid complied with Item L by stating that no franchise fee would be payable for regular monthly collections should the Borough do the billing, but that it would pay 5% of all fees generated from other services, such as roll-off boxes, dumpsters, extra pickups, and demolition removal.

## Motion for Reconsideration

The Borough thereafter filed a motion for reconsideration with the trial court, reiterating its argument that Harbaugh was not the lowest responsible bidder because Harbaugh's bid failed to conform to the RFP. The Borough also acknowledged the flaw in Burgmeier's bid as recognized by the trial court and suggested that it should be allowed to reject all bids and re-bid the contract. Petitioners filed an objection alleging that the Borough's motion for reconsideration was improper and simultaneously filed an answer denying the material allegations of the Borough's motion. Petitioners also contended in their answer that the Borough's motion raised issues and requested relief, i.e., to re-bid the contract, which were not raised or requested below, and hence, are now waived. By order dated December 3, 2014, the trial court sustained Petitioners' objection and struck the Borough's motion for reconsideration.[3] However, while this motion was pending, on November 6, 2014, the Borough filed a notice of appeal with the trial court.[4]

---

[3] The trial court issued an opinion explaining that the Borough's motion raised issues regarding Harbaugh's bid that were considered and rejected in its original opinion, as well as other issues, including Harbaugh's bid was beyond the scope of the RFP and that it should be able to

**(Footnote continued on next page…)**

7

## Discussion

On appeal,[5] the Borough argues that the trial court erred as a matter of law in: concluding that Harbaugh was the lowest responsible bidder; determining that it did not have the right to reject any and all bids; and expanding the scope of the RFP from a curb side residential and business service to include demolition removal and other services not solicited in the RFP. However, before we reach the merits of these arguments, we must address Petitioners' argument that the Borough is precluded from raising any issues on appeal because it did not file a motion for post-trial relief with the trial court.

### Motion for Post-Trial Relief

Petitioners correctly note that failure to file a motion for post-trial relief results in a waiver of all issues for appellate review and requires that the appeal be dismissed. *Borough of Harveys Lake v. Heck*, 719 A.2d 378, 380 (Pa. Cmwlth.

---

**(continued…)**

reject all bids, that were waived because they were not raised below and only first raised in the motion for reconsideration. (Supplemental Reproduced Record (S.R.R.) at 11b-27b.)

[4] The trial court did not issue a further opinion in support of its order under Pa.R.A.P. 1925(a), but instead relied on its previous opinions.

[5] Our standard of review of a trial court's decision to grant or deny a preliminary injunction is highly deferential. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003). As such, "we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." *Id.*

1998). However, a motion for post-trial relief is not necessary when appealing an order granting or denying a preliminary injunction; rather, this order is appealable as of right. *See* Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 311(a)(4) (appeal may be taken as of right from "[a]n order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction . . . ."); *Beaver County v. David*, 83 A.3d 1111, 1113 (Pa. Cmwlth.), *appeal denied*, 93 A.3d 464 (Pa. 2014) (order granting preliminary injunction is appealable as of right under Pa.R.A.P. 311(a)(4)).

### Preliminary/Permanent Injunction

We now turn to the merits. As noted above, Petitioners initiated this matter by filing a motion with the trial court seeking a preliminary injunction enjoining the Borough from entering into a contract with Burgmeier. A court may grant a preliminary injunction only where the moving party establishes the following elements: (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) greater injury would result from refusing an injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking the injunction is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the injunction will not adversely affect the public interest. *Dragani v. Borough of Ambler*, 37 A.3d 27, 31 (Pa. Cmwlth.), *appeal denied*, 49 A.3d 444 (Pa. 2012). "For a preliminary injunction to issue, every one of the prerequisites must be established; if the petitioner fails to establish any one of

9

them, there is no need to address the others." *County of Allegheny v. Commonwealth*, 544 A.2d 1305, 1307 (Pa. 1988).

Moreover, a preliminary injunction is intended to preserve the status quo and prevent imminent and irreparable harm that might occur before the merits of the case can be heard and determined. After a preliminary injunction is awarded or denied, the case proceeds for a final hearing on the merits. *Soja v. Factoryville Sportsmen's Club*, 522 A.2d 1129, 1131 (Pa. Super. 1987). The preliminary injunction proceeding is distinct from the final hearing on the merits. *Kee v. Pennsylvania Turnpike Commission*, 743 A.2d 546, 549 (Pa. Cmwlth. 1999). Indeed, it is well established that separate standards govern a request for a preliminary injunction and a request for permanent injunctive relief: a preliminary injunction looks for the presence of imminent, irreparable harm, whereas a permanent injunction is warranted if no adequate remedy at law exists for a legal wrong.[6] *City of Chester v. Chester Redevelopment Authority*, 686 A.2d 30, 35 (Pa. Cmwlth. 1996), *appeal denied*, 695 A.2d 787 (Pa. 1997). Consequently, we have held that it is inappropriate for a court to treat a hearing for a preliminary injunction as a final hearing and as a basis for a permanent injunction, unless the parties stipulate to the contrary. *Kee*; *Berger by & through Berger v. West Jefferson Hill School District*, 669 A.2d 1084 (Pa. Cmwlth. 1995).

As noted above, the trial court did not address the necessary elements for a preliminary injunction in its opinion, nor did it explain how Petitioners satisfied each of these elements in this case. Additionally, the stipulation executed by Petitioners and the Borough merely addresses the controlling facts in this matter and

---

[6] A court's final disposition of a request for permanent injunctive relief is independent of its determination relating to preliminary injunctive relief and the denial of the latter does not foreclose an order for a permanent injunction. *Soja*.

10

makes no mention of treating the preliminary injunction proceedings as a final hearing on the merits for the purpose of entering permanent injunctive relief. Nevertheless, the trial court engaged in a substantive analysis of the bids of Harbaugh and Burgmeier and ultimately directed the Borough to terminate its contract with Burgmeier and to accept Harbaugh's bid, effectively granting permanent injunctive relief. Such relief was clearly not appropriate given the stage of the proceedings before the trial court. Furthermore, the trial court's complete lack of analysis of the necessary elements relative to preliminary injunctive relief precludes this Court from conducting any meaningful review of the trial court's decision. As we recently noted in *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 370 (Pa. Cmwlth. 2015), where a record is not adequate for appellate review, a remand is necessary for a zoning hearing board "to develop the record and make the necessary findings." Similarly, here, a remand is necessary for the trial court to make appropriate findings regarding the requisite elements for a preliminary injunction.

Accordingly, the order of the trial court is vacated and the matter is remanded to the trial court for further findings consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harold Lindeman, Jamie Livengood    :
and Matthew Beeman                :
                                     :    No. 2063 C.D. 2014
          v.                     :
                                       :
The Borough of Meyersdale,       :
Somerset County,                 :
                 Appellant     :

## _**ORDER**_

AND NOW, this 30th day of December, 2015, the order of the Court of Common Pleas of Somerset County (trial court), dated October 7, 2014, is hereby vacated. The matter is remanded to the trial court for further findings consistent with this opinion.

        Jurisdiction relinquished.

 

                                        _____
                                        PATRICIA A. McCULLOUGH, Judge