IN THE COMMONWEALTH COURT OF PENNSYLVANIA

SBG Management Services, Inc., : 
Marchwood Realty Co., L.P., Fern : 
Rock Realty Co., L.P., Marshall : 
Square Realty Co., L.P., Oak Lane : 
Realty Co., L.P., and Simon : 
Garden Realty Co., L.P. : 
 : 
          v. : 
 : 
Philadelphia Gas Works, City of : 
Philadelphia, and Seth A. Shapiro : 
in his official capacity as the : 
President and CEO of PGW : 
 : 
Appeal of: Philadelphia Gas Works :     No. 380 C.D. 2024
and City of Philadelphia :     Argued: March 4, 2025

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT           FILED: June 17, 2025

        Philadelphia Gas Works and the City of Philadelphia (collectively PGW) appeal a special injunction entered by the Court of Common Pleas of Philadelphia County (trial court) to enjoin PGW from terminating gas service to the owners of five properties managed by SBG Management Services, Inc. (collectively, Landlords) until the trial court rendered a decision on Landlords' request for a preliminary injunction.[1] The special injunction was issued in conjunction with the

---

[1] The five properties managed by SBG Management Services, Inc. are: 5515 Wissahickon Avenue (owned by Marchwood Realty Co., L.P.); 900-938 Godfrey Avenue (owned by Fern Rock Realty Co., L.P.); 844 N. 6th Street (owned by Marshall Square Realty Co., L.P.); 1623-35 W. Chelten Avenue (owned by Oak Lane Realty Co., L.P.); and 6731 Musgrave Street (owned by Simon Garden Realty Co., L.P.).

parties' ancillary litigation.[2]  On appeal, PGW argues that the PUC has exclusive jurisdiction over the termination and restoration of residential gas service and, thus, the trial court lacked jurisdiction to enter the special injunction.  Alternatively, PGW argues that Landlords did not establish all the prerequisites for a special injunction because they lacked a clear right to relief and did not prove an immediate and irreparable harm that could not be compensated in damages.  For the reasons that follow, we affirm the trial court.

## Background

PGW is a municipal utility that provides natural gas service to customers in the City of Philadelphia.  As such, PGW is subject to regulation by the PUC.  *See* 66 Pa. C.S. §§102, 2212.  Landlords own five residential properties in the City.

On September 29, 2023, PGW notified Landlords that the gas service to their five properties would be terminated in November.  The shut-off notices stated that past-due amounts owed by Landlords for the period between April 2023 and August 2023 had triggered the decision to terminate gas service.[3]  Disputing these

---

[2] Landlords have filed formal complaints with the Pennsylvania Public Utility Commission (PUC) to challenge the quality and reasonableness of their gas service provided by PGW.  *See SBG Management Services, Inc., et al. v. Philadelphia Gas Works*, PUC Docket Nos. C-2012-2304183; C-2012-2304324; C-2015-2486618; C-2015-2486642; C-2015-2486648; C-2015-2486655; C-2015-2486664; C-2015-2486670; C-2015-2486674; and C-2015-2486677.

In addition, Landlords have filed a civil action seeking damages for breach of contract and unjust enrichment.  *See SBG Management Services, Inc. v. City of Philadelphia c/o Philadelphia Gas Works* (C.C.P. Phila, No. 2021-02801).

[3] The properties subject to the shut-off notices and amount of arrearages follow:

> 5515 Wissahickon Avenue: $772.89 and $18,233.68
> 900-938 Godfrey Avenue: $147.16, $2,894.16, and $2,750.07
> 844 N. 6th Street: $2,481.69 and $3,350.01
> 1623-35 Chelten Avenue: $3,148.37 and $3,406.53

2

monthly arrearages, Landlords instituted a suit in equity to enjoin PGW from terminating their gas service, as threatened. *SBG Management Services, Inc., et al. v. Philadelphia Gas Works, et al*. (C.C.P. Phila., No. 231101740, filed November 15, 2023).

The equity complaint alleged that PGW's shut-off notices improperly sought to "force" Landlords to pay invoices that Landlords disputed, averring that "the meter readings have been inaccurate and caused unexplained surges in usage." Complaint, ¶2; R.R. 14a. The complaint further alleged that PGW owed Landlords approximately $2,000,000 because of PGW's unlawful collection practices. Complaint, ¶25; R.R. 17a. Specifically, Landlords claim that:

> PGW engaged in a practice where it docketed delinquent amounts owed by gas customers as municipal liens, and simultaneously continued to charge interest on the delinquent amounts at the tariff rate of eighteen percent (18%). When [Landlords] paid their monthly gas bills, a bulk of the amount was allocated to paying off the substantial interest that accrued each year. The principal amounts remained virtually unchanged.

Trial Court Pa.R.A.P. 1925(a) Op. at 3 (quoting the pleading filed in *SBG Management Services, Inc. v. City of Philadelphia c/o Philadelphia Gas Works* (C.C.P. Phila., No. 2021-02801). Landlords' equity complaint alleged that PGW engaged in "intentional and conscious discrimination" and retaliation against Landlord because of their opposition to PGW's "unlawful billing practices." Complaint, ¶27; R.R. 17a.

Landowners sought a declaratory judgment that because PGW's termination of service was based on "*disputed* gas accounts," it violated the

---

6731 Musgrave Street: $1,617.18 and $9,195.32
Complaint, ¶24; Reproduced Record at 17a (R.R. __).

3

Fourteenth Amendment to the United States Constitution[4] and Article I, Sections 1, 20, and 26 of the Pennsylvania Constitution.[5]  Complaint, Request for Relief ¶¶3-4; R.R. 33a.  Landlords sought to enjoin the termination of their gas service pending the PUC's decision on their formal complaints and the trial court's ruling on their civil action for damages.  The complaint asserted that Section 1406(a)(1) of the Public Utility Code prohibits a utility from terminating gas service on a disputed account.[6]  Complaint, ¶¶111-12; R.R. 30a.  With their complaint, Landlords filed a petition for a preliminary injunction to maintain the *status quo ante*.

On November 17, 2023, the trial court conducted a hearing on Landlords' preliminary injunction request.  Landlords informed the trial court that the gas service to five buildings had been shut off beginning "on the coldest day of the year" and for the two days thereafter.  Notes of Testimony, 11/17/2023, at 10, 14 (N.T. __); R.R. 96a; 100a.  After Landlords paid the disputed arrearages, gas service was restored to the buildings.

PGW informed the trial court that "this dispute is moot or becoming moot" because "gas has been restored at one property and is in the process of being restored on the other properties."  N.T. 12-13; R.R. 98a-99a.  PGW also stated that the dispute about PGW's gas service was the subject of an ongoing PUC hearing, at which the administrative law judge (ALJ) told Landlords that they "had to pay." N.T. 14; R.R. 100a.  Landlords disputed PGW's description of the ALJ's statement. Landlords asserted that the ALJ acknowledged that the arrearages alleged by PGW

---

[4] U.S. CONST. amend. XIV.

[5] PA. CONST. art. I, §§1, 20, 26.

[6] *Formerly* 66 Pa. C.S. §1406(a)(1).  This provision expired on December 31, 2024, pursuant to the Act of October 22, 2014, P.L. 2545, §8, 66 Pa. C.S. §1419.

were disputed but explained he could not "entertain any kind of motion" that related to the bills issued from April to August of 2023. N.T. 28; R.R. 114a.

Graciela Christlieb, of PGW's law department, testified on behalf of PGW. She stated that there is a "winter moratorium" between December 1st and March 31st, during which PGW cannot terminate gas service. N.T. 23; R.R. 109a. Prior to terminating gas at a leased premise, PGW must give 37 days' advance notice to the landlord. If the outstanding charges are not paid by the landlord within seven days of the notice to the landlord, PGW notifies the tenants. If gas service is terminated, a tenant may pay to have it restored. Restoration of gas service must be completed within 72 hours of payment or by the start of the winter moratorium.

Christlieb testified that a customer can file a complaint with the PUC if he disagrees with the amount of a utility bill. During the pendency of the PUC's review, a utility is prohibited from terminating service. However, the customer remains responsible for new bills that accrue during the review proceeding. If the customer does not pay the interim invoices, then the utility may terminate service.

At the conclusion of the hearing, the parties agreed to a resolution. Specifically, from December of 2023 to March 31, 2024, PGW agreed to maintain gas service to the five properties, and in exchange, Landlords agreed to make monthly payments in the amount of $15,000 to PGW. Landlords would notify PGW how the $15,000 should be allocated between the five property accounts so that PGW could properly credit each account with a payment. The parties also agreed to mediate their dispute.

The trial court entered an order memorializing the parties' agreement. It stated, in pertinent part, as follows:

> 1. A special injunction is GRANTED and [PGW] must complete restoration of gas service to the five properties that are the

subject of [Landlords'] Petition on or before 12:00 p.m. on November 18, 2023;

2. [Landlords] shall post a bond of $5,000 with the Office of Judicial Records on or before 5:00 p.m. on November 17, 2023;

. . . .

4. The remainder of the petition is held for further briefing and hearing upon further order[.]

R.R. 161a-62a. A special injunction is the same as a preliminary injunction.[7]

On December 26, 2023, Landlords filed their first amended complaint. On January 25, 2024, PGW filed a motion to transfer that complaint to the PUC, alleging the trial court lacked subject matter jurisdiction. PGW asserted that the termination of gas service is a matter committed to the exclusive jurisdiction of the PUC. The trial court held the transfer motion in abeyance, while the parties attempted to resolve their dispute through mediation.

Landlords then filed a second amended complaint. This complaint again raised the claim that PGW had engaged in selective termination of gas service in violation of constitutional and statutory law. Addressing the jurisdictional argument in PGW's transfer motion, the complaint cited *Drafto Corporation v. National Fuel Gas Distribution Corporation*, 806 A.2d 9, 15 (Pa. Super. 2002) (matters requiring special competence should be referred to the PUC but a collection

_____

[7] A special injunction and preliminary injunction "merge into one and the words are used interchangeably." 5 GOODRICH AMRAM 2d §1531(a):1 (Amram Commentary) (updated March 2025). Pennsylvania Rule of Civil Procedure 1531(a) treats special injunctions as preliminary injunctions. Pa.R.Civ.P. 1531(a). The Pennsylvania Supreme Court has described a special injunction as one that "grants relief which is auxiliary to the main relief requested in the complaint." *Matter of Franklin Township Board of Supervisors*, 379 A.2d 874, 879 (Pa. 1977). "A special injunction, like a preliminary injunction, is commonly sought to preserve the *status quo* until the final hearing." *Turner Construction v. Plumbers Local 690*, 130 A.3d 47, 53 n.6 (Pa. Super. 2015) (quoting 15 STANDARD PENNSYLVANIA PRACTICE 2d §83:11).

matter does not fall into that category). It also asserted that the PUC cannot "enjoin PGW from wrongly terminating gas service[.]" Second Amended Complaint, ¶22; R.R. 253a (emphasis omitted). Only a court can issue an injunction. Moreover, the PUC has "*no inherent authority to enforce any order that it issues*." Second Amended Complaint, ¶23; R.R. 253a (emphasis in original).

On February 27, 2024, the trial court held a conference to determine the status of the parties' mediation efforts and, if necessary, to schedule a hearing on Landlords' pending request for a preliminary injunction. At the conference, Landlords agreed to continue making monthly payments in the amount of $15,000, through July 15, 2024.

Following the conference, on March 1, 2024, the trial court ordered, in relevant part, as follows:

1. [PGW] shall not terminate the gas service to the five properties that are the subject of the Petition without leave of [c]ourt;

2. The parties shall use their best efforts to mediate their dispute during the month of April 2024;

3. [PGW and the City] shall file their response(s) to the Petition on or before April 12, 2024; [and]

4. [Landlords] shall file their reply(ies) to the Petition on or before April 26, 2024[.]

Trial Court Order, 3/1/2024, at 1. The trial court approved the parties "Stipulation and Order," which provided that Landlords "shall remit a payment of $15,000.00 to PGW to be received on the [15th] day of every month beginning January 15, 2024[,] until July 15, 2024." Stipulation and Order, 3/1/2024, at ¶1.

PGW appealed the trial court's March 1, 2024, order.

7

## Trial Court Pa.R.A.P. 1925(a) Opinion

In its Pa.R.A.P. 1925(a) opinion, the trial court explained its conclusion that it had jurisdiction to issue a special injunction to PGW. In *Drafto Corporation*, 806 A.2d at 15, the Superior Court held that the trial court had jurisdiction to enjoin a termination of gas service because the matter did "not raise a complex issue that require[d] deferment to the PUC." Likewise, here, Landlords sought equitable relief "that would not be available in any appropriate time frame before the PUC." Trial Court Pa.R.A.P. 1925(a) Op. at 8 (quoting Second Amended Complaint, ¶48). Only the judiciary can issue "preliminary injunctive relief." Trial Court Pa.R.A.P. 1925(a) Op. at 8. In their civil complaint, Landlords did not challenge the reasonableness, adequacy or sufficiency of PGW's service, facilities or rates. Rather, Landlords seek damages, which is not relief the PUC can grant. The special injunction maintains the *status quo ante* while the parties' service dispute is adjudicated by the PUC and Landlords' claim for damages is resolved by the trial court.

As to the merits of the special injunction, the trial court explained that it was granted upon consent of the parties. Nevertheless, the trial court considered the six prerequisites of a preliminary injunction:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) greater injury would result from refusing an injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking the injunction is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the injunction will not adversely affect the public interest.

8

Trial Court Pa.R.A.P. 1925(a) Op. at 9 (quoting *Lindeman v. Borough of Meyersdale*, 131 A.3d 145, 151 (Pa. Cmwlth. 2015)). The trial court concluded that Landlords met the first three elements because their lower-income tenants would suffer immediate and irreparable injury if they were not able to heat their homes or cook therein despite having paid for the gas service. As to the fourth element, the trial court stated that, in light of the decades-long dispute between the parties, Landlords were likely to prevail on the merits of their claim that PGW terminated Landlords' gas service in retaliation. Finally, the trial court stated that the fifth and sixth elements were satisfied because the injunction maintained gas service only until the request for a preliminary injunction was adjudicated. Even so, that order could be adjusted upon leave of court. Finally, the March 1, 2024, order was entered with consent of the parties. Specifically, PGW "did not object to the continuation of the special injunction pending a hearing on the preliminary injunction until it filed its notice of appeal of the March 1 Order." Trial Court Pa.R.A.P. 1925(a) Op. at 12.

### Issues on Appeal

PGW raises two issues on appeal:[8]

> 1. Did the [trial court] erroneously grant injunctive relief when it lacked subject matter jurisdiction, because all of [Landlords'] allegations against [PGW] – including [Landlords']

---

[8] Our review of a preliminary injunction is "highly deferential." *Warehime v. Warehime*, 860 A.2d 41, 46 (Pa. 2004). The highly deferential standard of review requires that:

> When reviewing a [common pleas] court's grant or refusal of a preliminary injunction, an appellate court does not inquire into the merits of the controversy, but rather *examines only the record to ascertain whether any apparently reasonable grounds existed for the action of the court* below. We may reverse if the [common pleas] court's ruling amounted to an abuse of discretion or a misapplication of law.

*Hendricks v. Hendricks*, 175 A.3d 323, 330 (Pa. Super. 2017) (quoting *Morgan Trailer Manufacturing Company v. Hydraroll, Ltd.*, 759 A.2d 926, 932 (Pa. Super. 2000)) (emphasis added).

allegations regarding the termination of service – were within the exclusive or primary jurisdiction of the [PUC]?

2. Did the [trial court] erroneously continue and expand its initial grant of injunctive relief, when [Landlords'] petition failed sufficiently to allege the six (6) requirements for a preliminary injunction set forth in, inter alia, [*Marcellus Shale Coalition v. Department of Environmental Protection*], 185 A.3d 985, 986 n.4 (Pa. 2018); when the [trial court] failed to consider that [PGW] could not terminate gas service without complying with the applicable termination provisions of the Public Utility Code, 66 Pa. C.S. §1521 et seq., and that [Landlords] had an adequate remedy at law in the form of a damages action to recoup any alleged overcharges?

PGW Brief at 4.

**Analysis**

**Relevant Legal Authority**

This appeal raises questions of exclusive and primary jurisdiction. Under the Judicial Code, "[t]he courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings," except as may otherwise be provided by law. 42 Pa. C.S. §931(a). Our Supreme Court has explained that where the legislature has

> seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise and broad regulatory and remedial powers to administer that statutory scheme, *a court should be reluctant to interfere in those matters and disputes* which were intended by the [l]egislature to be considered, at least initially, by the administrative agency. Full utilization of the expertise derived from the development of various administrative bodies would be frustrated by indiscriminate judicial intrusions into matters within the various agencies' respective domains.

*Feingold v. Bell of Pennsylvania*, 383 A.2d 791, 793 (Pa. 1977) (emphasis added). In some cases, a court has no choice but to refer the matter to an administrative

tribunal. Where a statutory remedy is created, it is exclusive of a judicial remedy, because acts of the legislature "shall be strictly pursued." *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County*, 328 A.2d 819, 823 (Pa. 1974).

Under the doctrine of "primary jurisdiction," both courts and agencies have a role to play in the resolution of disputes. To preserve the integrity of the regulatory scheme, the parties preliminarily resort to the agency for a resolution of disputes. *County of Erie v. Verizon North, Inc.*, 879 A.2d 357, 363 (Pa. Cmwlth. 2005). We have explained it as follows:

> [T]he doctrine of primary jurisdiction permits the bifurcation of a plaintiff's claim, whereby a trial court, faced with a claim requiring the resolution of an issue that is within the expertise of an administrative agency, will first cede the analysis of the issue or issues to that agency. Once the agency resolves the particular issue or issues over which it has primary jurisdiction, the [] court may proceed, if necessary, to apply the agency's decision to the dispute remaining before the trial court.

*Pettko v. Pennsylvania American Water Company*, 39 A.3d 473, 479 (Pa. Cmwlth. 2012). Primary jurisdiction requires "deference to the will of the legislature in its establishment of a statutory remedy." *Sunrise Energy, LLC v. First Energy Corp.*, 148 A.3d 894, 904 (Pa. Cmwlth. 2016).

The Public Utility Code charges the PUC with responsibility for the reasonableness, adequacy, and sufficiency of public utility services. 66 Pa. C.S. §§501, 1501. In matters where the PUC has exclusive jurisdiction, the judiciary may not order relief. *Behrend v. Bell Telephone Company of Pennsylvania*, 243 A.2d 346, 347-48 (Pa. 1968). Specifically, the Pennsylvania Supreme Court has held:

> Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC—not in the courts. It has been so held involving *rates,*[] *service,*[] *rules of service,*[]

11

*extension and expansion,[] hazard to public safety due to use of utility facilities,[] installation of utility facilities,[] location of utility facilities,[] obtaining, alerting, dissolving, abandoning, selling* or transferring any right, power, privilege, service franchise or property[] and rights to serve particular territory.[]

*Borough of Lansdale v. Philadelphia Electric Company*, 170 A.2d 565, 567 (Pa. 1961) (footnotes omitted) (emphasis added).

On the other hand, the PUC lacks jurisdiction to resolve commercial disputes between customers and utilities, *Byer v. Peoples Natural Gas Company*, 380 A.2d 383, 386 (Pa. Super. 1977), and the PUC does not have the authority to award damages in negligence or breach of contract actions. *Feingold*, 383 A.2d at 794-95. In such cases, the complaining party may seek redress from the courts.

In questions of jurisdiction, "courts must look beyond the form of action to the essence of the underlying claims." *County of Erie*, 879 A.2d at 364. For example, in *T.W. Phillips Gas and Oil Company v. Peoples Natural Gas Company*, 492 A.2d 776, 779 (Pa. Cmwlth. 1985), this Court held that the common pleas court had jurisdiction to issue an injunction to maintain the *status quo* pending an adjudication by the PUC. There, a utility sought to enjoin another utility and a manufacturing plant from constructing a pipeline to allow the manufacturer to purchase gas from another utility. In contrast, in *Morrow v. Bell Telephone Company of Pennsylvania*, 479 A.2d 548, 551 (Pa. Super. 1984), the Superior Court found that an action couched in terms of equity was, in actuality, a challenge to a utility's rates and services, which were matters committed to the exclusive jurisdiction of the PUC.

A preliminary injunction preserves the *status quo* as it existed before the acts complained of, thereby allowing the court to "conduct further proceedings to resolve the underlying merits of the case." *CKHS, Inc. v. Prospect Medical Holdings, Inc.*, 329 A.3d 1204, 1215 (Pa. 2025) (quoting *Maritrans GP Inc. v.*

12

*Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1286 (Pa. 1992)). As observed by the trial court, there are six prerequisites to a preliminary injunction. *See Lindeman*, 131 A.3d at 151. Our review of the grant of a preliminary injunction is deferential. *Warehime*, 860 A.2d at 46.

## Jurisdiction

PGW argues that the trial court lacked jurisdiction to issue the March 1, 2024, order because PGW is subject to regulation solely by the PUC. Landlords' equity complaint asserts that by terminating gas service during a "billing dispute," PGW violated Section 1406(a)(1) of the Public Utility Code, *formerly* 66 Pa. C.S. §1406(a)(1). PGW Brief at 19. PGW argues that only the PUC can enforce provisions of the Public Utility Code and directs the Court to several relevant provisions of the Public Utility Code.

Subchapter B of Chapter 15 of the Public Utility Code, is entitled "Discontinuance of Service to Leased Premises." 66 Pa. C.S. §§1521-1533. Chapter 15 provides a remedy to the landlord ratepayer challenging its termination of service. 66 Pa. C.S. §1523(a)(3). Regulations promulgated under Chapter 15 require advance notice but allow termination, notwithstanding a pending billing dispute. 52 Pa. Code §56.164.[9] Finally, PUC regulations authorize the issuance of "emergency relief" by an ALJ or by an individual commissioner. 52 Pa. Code §§3.1-3.2. PGW

---

[9] It states:

> In any case alleging unauthorized use of public utility service, as defined in §56.2 (relating to definitions), or the customer's failure to pay undisputed bills as required under §56.181 (relating to duties of parties; disputing party's duty to pay undisputed portion of bills; public utility's duty to pay interest whenever overpayment found), *a public utility may terminate service after giving proper notice in accordance with §§56.91-56.98, whether or not a dispute is pending*.

52 Pa. Code §56.164 (emphasis added).

argues that there is no need, or opportunity, for a court to augment these remedies with equitable relief.

PGW next argues that Landlords' claim of unreasonable or discriminatory practices by PGW is also a matter committed to the exclusive jurisdiction of the PUC. The Public Utility Code prohibits discrimination in service and rates, 66 Pa. C.S. §1502, and requires a public utility to "furnish and maintain adequate, efficient, safe, and reasonable service." 66 Pa. C.S. §1501.

Finally, PGW observes that the PUC has jurisdiction to consider constitutional challenges. *HIKO Energy, LLC v. Pennsylvania Public Utility Commission*, 209 A.3d 246, 262 (Pa. 2019) (administrative agencies can decide as-applied constitutional challenges). The Pennsylvania Supreme Court has held:

> We have expressly held that as-applied constitutional challenges must be raised before administrative agencies. *Lehman v. Pennsylvania State Police*, [] 839 A.2d 265, 276 ([Pa.] 2003) ("[C]laims challenging a statute's application to the facts of a particular case must be raised before the agency or are waived.") Several cogent reasons distinct to administrative agencies support this conclusion:
>
> > First, the agency is given an opportunity to interpret the statute it is charged with administering to avoid an unconstitutional application. Second, agencies currently decide challenges to the constitutionality of regulations; administrative competency is not an issue. Third, agencies are better situated than the courts to develop agency-specific issues, and to find facts. Fourth, refusing to consider constitutional challenges to a statute[']s application allows litigants to circumvent the exhaustion of administrative remedies doctrine before seeking judicial review.

*HIKO Energy*, 209 A.3d at 262 (quoting *Lehman*, 839 A.2d at 276).

14

For these reasons, PGW contends that the PUC has exclusive jurisdiction over Landlords' claims, including those arising under the United States and Pennsylvania Constitutions.

Landlords respond that PGW's argument mischaracterizes their complaint and request for emergency injunctive relief. Landlords explain that they did not ask the trial court to adjudicate any matter committed to the PUC's exclusive jurisdiction, including the specific disputes pending before the PUC. Rather, Landlords asked the trial court to vindicate their legal right not to have their service terminated for nonpayment of disputed invoices. This request did not require specialized knowledge of utility regulation but was a task well within the purview of the courts of common pleas.

Further, former Section 1406(a)(1) of the Public Utility Code prohibits PGW from terminating gas service on *disputed* accounts. It states:

> **(a) Authorized termination.--**A public utility may notify a customer and terminate service provided to a customer after notice as provided in subsection (b) for any of the following actions by the customer:
>
> (1) Nonpayment of an *undisputed* delinquent account.

*Formerly* 66 Pa. C.S. §1406(a)(1) (emphasis added). Equity is an appropriate mechanism for vindicating rights created by statutory law, and former Section 1406(a)(1) was in effect when the trial court issued its order.

In *Feingold*, 383 A.2d at 794, our Supreme Court explained the limits of the PUC's authority:

> The Public Utility Law[, Act of May 28, 1937, P.L. 1053,[10]] placed a broad range of subject matters under the control of the

---

[10] The Public Utility Law was repealed and replaced by the Public Utility Code, by the Act of July 1, 1978, P.L. 598.

15

[PUC], making that agency responsible for ensuring the adequacy, efficiency, safety, and reasonableness of public utility services. . . . It can be conceded that the subject matter of appellant's complaint is encompassed by Section 401 of the Public Utility Law[, *formerly* 66 P.S. §1171.] *The enforcement and remedial powers of the PUC, although formidable, are not those of a court*. The PUC is empowered to correct, by regulation or order, abuses in the provision of service. . . . The PUC has the power to impose fines upon a public utility for violation of the Public Utility Law. . . . If the PUC determines that the Public Utility Law, a regulation or order has been or is about to be violated, the PUC may petition the Court of Common Pleas of Dauphin County for appropriate judicial enforcement. . . . *Alternatively, the PUC may request that the Attorney General initiate legal proceedings to obtain judicial enforcement of the Public Utility Law or a* PUC order or regulation. . . . Since the PUC is a creature of statute, it has only those powers which are expressly conferred upon it by the Legislature and those powers which arise by necessary implication. . . . .

(internal citations omitted) (emphasis added). Further, "[e]ven where a statute provides a remedy for its enforcement, as the Public Utility Code does on matters relating to the reasonableness of a utility's service and rates, *Feingold* teaches that the statutory remedy must be adequate and complete." *Sunrise Energy*, 148 A.3d at 904. Landlords explain that because the PUC cannot award damages or enjoin PGW from effecting an unlawful termination of service, the statutory remedy meets neither test.

As to Chapter 15 of the Public Utility Code, Landlords argue that it does not cover the exigent circumstances created by PGW's termination of service to their tenants on a cold day in November. PGW had already chosen to ignore the clear statutory prohibition against terminating gas service where the consumer has disputed the amount owed. The PUC lacks the power to issue an injunction. Indeed, an order of the PUC can only be enforced with judicial action. Simply, there is a

16

role for the judiciary notwithstanding the PUC's authority to conduct administrative proceedings on disputes arising under the Public Utility Code and to issue administrative orders thereunder. We agree.

This Court has explained that "an administrative agency has exclusive jurisdiction where the legislature has given it the power to adjudicate on a particular subject matter." *Sunrise Energy*, 148 A.3d at 903. Section 501 of the Public Utility Code gives the PUC full powers to regulate utility rates and service. 66 Pa. C.S. §501; *Fairview Water Company v. Pennsylvania Public Utility Commission*, 502 A.2d 162, 166 (Pa. 1985). *See also* 66 Pa. C.S. §102 (defining "rate" and "service"). The reasonableness, adequacy and sufficiency of public utility service are all matters within the exclusive jurisdiction of the PUC.

Chapter 15 of the Public Utility Code addresses the discontinuance of service to leased premises. Section 1523(a)(3) states:

> **(a) Nonpayment of charges.**--*Except when required to prevent or alleviate an emergency as defined by the commission* or except in the case of danger to life or property, before any termination of service to a landlord ratepayer for nonaccess as defined by the commission in its rules and regulations or nonpayment of charges, *a public utility shall*:
>
> . . . .
>
> > (3) Notify each dwelling unit reasonably likely to be occupied by an affected tenant of the proposed termination in writing as prescribed in section 1526 (relating to delivery and contents of first termination notice to tenants) at least seven days after notice to the landlord ratepayer pursuant to this section and at least 30 days before the termination of service. *If within seven days of delivery or mailing of the notice to the landlord issued pursuant to this section the landlord ratepayer files a complaint with the commission disputing the right of the utility to terminate service, the notice shall not be rendered until the*

17

> *complaint has been adjudicated by the commission, but the landlord ratepayer shall continue to pay the undisputed portion of current bills when due pending the final decision of the complaint*.

66 Pa. C.S. §1523(a)(3) (emphasis added). This provision authorizes a landlord ratepayer to challenge a service termination by filing a formal complaint with the PUC. Contrary to PGW's view, however, Section 1523(a)(3) requires the landlord ratepayer to pay only "the undisputed portion of current bills" while the complaint is reviewed by the PUC. *Id*.

In determining that it had jurisdiction to issue the injunction, the trial court relied, in part, upon *Drafto Corporation*, 806 A.2d 9, which involved a dispute between a manufacturing company and its gas distribution company. The utility adjusted Drafto's meter to measure usage in centiliters per cubic foot instead of milliliters per square foot, but it failed to revise its billing system to reflect the meter changes. As a consequence, it billed Drafto for 10% of its actual gas consumption. When the utility tried to bill Drafto for the remaining 90%, it refused to pay. The utility issued a "48 hour shut off notice," and Drafto filed an informal complaint with the PUC and a civil complaint in the court of common pleas. *Id*. at 11. Drafto requested the common pleas court to enjoin the termination of gas services and to award compensatory and punitive damages. The utility filed preliminary objections, arguing that the PUC had primary jurisdiction. The common pleas court sustained the preliminary objections, with the exception of a damages claim.

Drafto appealed to the Superior Court, which reversed and directed the common pleas court to enter an injunction. The Superior Court explained that "matters regarding service provided *to a particular litigant* are for the courts to resolve, as opposed to matters involving the service the utility owed to the general public, which are for the PUC." *Drafto Corporation*, 806 A.2d at 15 (emphasis

added). The Superior Court noted that "Drafto makes no challenge to any PUC rule or regulation[.]" *Id*. Rather, Drafto asked for an injunction to prevent the utility from discontinuing gas service, which would ruin its business. Further, Drafto had raised cognizable defenses to invoices issued as a result of the utility's own errors.

PGW argues that the trial court's reliance on *Drafto Corporation* was misplaced, explaining that Drafto was a manufacturing company, and Landlords are engaged in the commercial real estate business. With the 1978 enactment of Chapter 15, the PUC now has exclusive authority to adjudicate disputes regarding the termination of service to leased residential premises.

However, PGW mischaracterizes the core issue in *Drafto Corporation*, 806 A.2d at 15, which "was, in essence, a collection matter." In questions of jurisdiction, "courts must look beyond the form of action to the essence of the underlying claims." *County of Erie*, 879 A.2d at 364. The Public Utility Code "does not confer exclusive jurisdiction [upon the PUC] to decide all matters involving regulated public utilities," including collection disputes. *Virgilli v. Southwestern Pennsylvania Water Authority*, 427 A.2d 1251, 1253 (Pa. Cmwlth. 1981).

Landlords sought an injunction to prevent PGW from terminating its gas services for nonpayment of disputed invoices because that action would render their rental units uninhabitable. As noted by the trial court, such an exigent circumstance required immediate relief that can only be provided by a court. As in *Drafto Corporation*, the civil action before the trial court is, in essence, a collection matter that does not challenge the rate for or quality of the gas service offered to the general public by PGW. The PUC will decide the regulatory issues, and the trial court will decide the contractual issues. In other words, the issues committed to the exclusive jurisdiction of the PUC will be decided by the PUC.

19

The Public Utility Code does not establish that the PUC alone must "decide all matters involving regulated public utilities." *Virgilli*, 427 A.2d at 1253. It is well within the purview of the courts to resolve contractual disputes between utilities and their customers. *Byer*, 380 A.2d at 386. Landlords' complaint relates to a hotly contested contractual and collection dispute. *Drafto*, 806 A.2d at 15. Accordingly, we conclude that the trial court had jurisdiction to issue an injunction to preserve the *status quo* while the other litigation matters proceed.

## Special Injunction

Alternatively, PGW argues that Landlords were not entitled to a special injunction because Landlords did not show that they were likely to prevail on the merits, *i.e.*, that their gas service was terminated in retaliation for Landlords disputing their gas service bills. PGW contends that its decision to terminate gas service was required by Landlords' disregard of invoices for April to August of 2023. PGW argues that the special injunction effectively grants Landlords "judicial permission not to pay the full amount of its *current* gas bills until the final resolution of [Landlords'] various ongoing cases against PGW[.]" PGW Brief 39. This is manifestly unfair to PGW and effects an unjust windfall to Landlords because their tenants "are obviously using gas every day." *Id*. Finally, the injunction is at odds with the Public Utility Code, which requires that gas customers continue to be responsible for paying the undisputed portion of every gas bill. 66 Pa. C.S. §1523(a)(3).

Landlords respond that they satisfied the six prerequisites for a preliminary injunction. *Lindeman*, 131 A.3d at 151. First, the injunction prevents the immediate and irreparable injury to tenants otherwise unable to heat and cook in their homes and in other ways rendered uninhabitable. Second, the injunction does

not harm PGW, which will be paid $15,000 per month, an amount higher than was budgeted for the properties. Third, the injunction restores the *status quo* that existed before PGW terminated service. Fourth, Landlords are likely to prevail on their claim of retaliation by PGW, which appears to have terminated service because of Landlords' claim against PGW for $2,000,000. Fifth, the injunction is reasonable in scope. Sixth, an injunction does not adversely affect the public interest. The special injunction lasts only until the preliminary injunction is adjudicated. Even so, the trial court's order allows PGW to petition the court for leave to terminate gas service prior to that adjudication. Finally, the special injunction was entered "with the parties' consent." Landlords Brief at 26 (quoting Trial Court Pa.R.A.P. 1925(a) Op. at 9).

Pennsylvania Rule of Civil Procedure 1531(a) governs injunctions and provides:

> (a) A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.

Pa.R.Civ.P. 1531(a). Case law has established the six prerequisites for a preliminary injunction. We have emphasized that our review of a trial court's order granting preliminary injunctive relief is "highly deferential," which means that we examine the record to determine if there were "any apparently reasonable grounds" to support

the trial court's order.  *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003).

Here, PGW focuses its challenge to the injunction on two main grounds:  Landlords did not show a clear right to relief or the existence of an immediate and irreparable harm that cannot be compensated in damages.

The "clear right to relief" element does not require the applicant to prove an absolute right to relief on the underlying claim.  *T.W. Phillips Gas and Oil Company*, 492 A.2d at 780.  In *Fischer v. Department of Public Welfare*, 439 A.2d 1172, 1174 (Pa. 1982), the Supreme Court explained the "clear right" requirement as follows:

> Where the threat of immediate and irreparable harm to the petitioning party is evident, that the injunction does no more than restore the status quo and the greater injury would result by refusing the requested injunction than granting it, an injunction may properly be granted where substantial legal questions must be resolved to determine the rights of the respective parties.

After identifying, but not resolving, the issues raised on the merits of the underlying claim in *Fischer*, the Supreme Court again referred to the substantiality of the questions raised as determinative.

> These contentions raise important questions that are deserving of serious consideration and resolution.  In view of the seriousness of the questions to be decided and the real threat of immediate and irreparable harm to the appellees, there was, without question, reasonable grounds for the entry of the preliminary injunction preserving the status quo until the Commonwealth Court decided the merits of the issue raised.

*Id*. at 1175.  In short, to show a "clear right to relief," the matter must raise substantial legal questions.  *Cutler v. Chapman*, 289 A.3d 139, 152 (Pa. Cmwlth. 2023).

22

Here, the trial court explained that it appeared that PGW improperly retaliated against Landlords by terminating their service for nonpayment of five months of gas bills because of Landlords' claim for damages against PGW in the amount of $2,000,000. Further, former Section 1406 of the Public Utility Code prohibited PGW from terminating gas service on *disputed* accounts. Aware that Landlords disputed their gas bills, PGW unlawfully terminated gas service to the residential properties in violation of former Section 1406.[11] Landlords have produced sufficient evidence to show that "substantial legal questions must be resolved to determine the rights of the parties." *Wolk v. School District of Lower Merion*, 228 A.3d 595, 612 (Pa. Cmwlth. 2020). We conclude that the trial court did not err in determining that Landlords satisfied the clear right to relief element.

Next, PGW argues that Landlords have not shown that they would suffer immediate or irreparable harm in the absence of injunctive relief. The trial court found the inability of Landlords' tenants to heat, cook, and use hot water in their homes, despite having paid for the gas service, constituted immediate and irreparable harm. Money damages will not compensate these tenants for having their homes rendered uninhabitable. Further, PGW's actions have threatened a shutdown of Landlords' rental businesses, which constitutes immediate and irreparable harm. Finally, for purposes of injunctive relief, statutory violations constitute irreparable harm *per se*. *Wolk*, 228 A.3d at 610. Former Section 1406 of the Public Utility Code prohibited PGW from terminating gas service on *disputed* accounts. We agree with the trial court that Landlords established the requisite harm.

---

[11] Even the current provision of the Public Utility Code states that "landlord ratepayer shall continue to pay the undisputed portion of current bills." 66 Pa. C.S. §1523(a)(3). Stated otherwise, the landlord ratepayer is not required to pay the disputed portion of current bills.

23

Importantly, the *status quo* to be maintained by a preliminary injunction is the last actual, peaceable and lawful non-contested status which preceded the pending controversy. *Lewis v. City of Harrisburg*, 631 A.2d 807, 812 (Pa. Cmwlth. 1993). As found by the trial court, the injunction restores that status: it requires PGW to provide gas service and Landlords to pay $15,000 per month.

The trial court held that Landlords satisfied the six prerequisites for the special injunction, and we discern no error in that holding.

### Conclusion

At its essence, Landlords' equity complaint relates to a contractual and collection dispute with PGW. The courts have jurisdiction to resolve contractual and collection disputes between utilities and customers, including the issuance of an injunction to preserve the *status quo* until the underlying litigation is resolved. *Byer*, 380 A.2d 383; *Drafto Corporation*,

The injunction order is narrowly tailored to the exigency. It ensures service to residential properties until the PUC decides the controversy relating to PGW's metering and billing practices and the trial court decides the damages claims of Landlords. At the same time, the trial court's order guarantees Landlords' continued payment of $15,000 per month for gas service, which belies PGW's claims of "free or discounted gas." The special injunction requires PGW to maintain gas service only until the petition for preliminary injunction is adjudicated and allows PGW to seek relief from the special injunction during that interim.

We conclude that reasonable grounds exist for the trial court's special injunction and, thus, affirm the trial court.

MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

SBG Management Services, Inc., : 
Marchwood Realty Co., L.P., Fern : 
Rock Realty Co., L.P., Marshall : 
Square Realty Co., L.P., Oak Lane : 
Realty Co., L.P., and Simon : 
Garden Realty Co., L.P. : 
 : 
v. : 
 : 
Philadelphia Gas Works, City of : 
Philadelphia, and Seth A. Shapiro : 
in his official capacity as the : 
President and CEO of PGW : 
 : 
Appeal of: Philadelphia Gas Works : No. 380 C.D. 2024
and City of Philadelphia : 

# **O R D E R**

AND NOW, this 17th day of June, 2025, the order of the Court of Common Pleas of Philadelphia County, entered March 1, 2024, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita