J-A17042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DANIEL I. HERMAN AND LOUISE GEER HERMAN, HUSBAND AND WIFE | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| RICHARD P. MOSS AND CYNTHIA R. MOSS, HUSBAND AND WIFE | : : : : : | No. 1429 WDA 2024 |
| Appellants | : | |

Appeal from the Order Entered October 25, 2024
In the Court of Common Pleas of Lawrence County Civil Division at
No(s): 10985 of 2021

BEFORE:  McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:            **FILED: October 2, 2025**

Richard P. Moss and Cynthia R. Moss, husband and wife (collectively "the Mosses"), appeal from the order entered on October 25, 2024, in the Court of Common Pleas of Lawrence County, which granted injunctive relief to Daniel I. Herman and Louise Geer Herman, husband and wife (collectively "the Hermans"), in this trespass action.  After careful review, we vacate the order and remand for further proceedings.

On December 22, 2021, the Hermans commenced this action with the filing of a single-count complaint for trespass against the Mosses.  Therein, the Hermans stated that they own approximately 23.5 acres of land situated in Neshannock Township, Lawrence County, Pennsylvania, pursuant to a deed dated December 28, 1993.  Complaint, 12/22/21, at ¶ 3.  According to the Hermans, their property includes a 50-foot strip of land or private road

sometimes referred to as Ellgass Lane, upon which the Mosses "have no easement, right[-]of[-]way, or any ability legally to enter…." *Id.* at ¶ 6; *id.* at Exhibit A ("Herman Deed") at 1-2. The Mosses own approximately 3 acres of land, situated adjacent to Ellgass Lane, which they acquired from the Estate of Walter Boron by a fiduciary deed dated November 5, 2013. *Id.* at ¶ 11; *id.* at Exhibit A-1 ("Land Survey") (single page); *id.* at Exhibit B ("Moss Deed") at 2-3; *see also id.* at ¶¶ 12-16 (stating that there is no evidence of any easement with regard to the Mosses' property, nor is there any evidence that the Mosses have been granted any right, title, or interest in any easements over the Hermans' property).

The Hermans essentially claimed that the Mosses have trespassed on their private property — specifically, on the 50-foot strip of land, *i.e.*, Ellgass Lane — and that they continue to do so, causing significant and irreversible damage. *See id.* at ¶¶ 17, 19-20, 24 (describing the damage caused to the Hermans' property as a result of the Mosses' actions in trespass). Accordingly, they sought a permanent injunction enjoining the Mosses from entering onto their property and from altering, changing, or modifying their property in any way, in addition to monetary damages in the amount of $38,400.00. *Id.* at ¶ 28.

On the same date that the Hermans filed their complaint, they also presented a petition seeking preliminary injunctive relief. *See* Petition, 12/22/21, at 1-4. In their petition, the Hermans averred that, despite numerous written and verbal warnings that they have no legal right to enter

onto their property, the Mosses have entered onto the 50-foot strip of land owned by the Hermans on numerous occasions and have caused extreme damage to the property. *Id.* at ¶¶ 2-3. They alleged, *inter alia*, that the Mosses have moved a significant amount of gravel onto the property, cut down trees, destroyed foliage, and shifted water onto the property. *Id.* at ¶¶ 4-7. Moreover, they averred that the Mosses will continue to "willfully, wantonly, and maliciously damage the [Hermans'] property…, shift the water table of the property, shift the flow of water on the property, destroy additional foliage [and] trees[,] and potentially damage the [Hermans'] sewer line…, as well as totally disrupt and destroy the wetlands on the premises…." *Id.* at ¶ 12; *see also id.* at ¶¶ 4, 6 (stating that the damage will be irreversible and will cause damage to other portions of the Hermans' property, including potential flooding and damage to the sewer line).

Based on the Hermans' representations, the trial court granted their *ex parte* request for preliminary injunctive relief and scheduled a hearing on the matter, pursuant to Pa.R.Civ.P. 1531, for January 5, 2022, which was later rescheduled for March 11, 2022. *See* Order, 12/22/21, at 1 ("A preliminary injunction is hereby issued prohibiting the [Mosses] from entering onto the property of the [Hermans]," and from "doing anything of any nature to change or alter the [Hermans'] property…."); *see also* Trial Court Opinion ("TCO"), 10/25/24, at 3 (explaining that the trial court rescheduled the hearing on the petition for injunctive relief in order to permit the Mosses adequate time to prepare).

On February 2, 2022, the Mosses filed an answer and new matter to the Hermans' complaint, in which they asserted the existence of "a private [50-]foot …easement or private right-of-way … expressly reserved within prior deeds … in the chain of title to [the Hermans'] property, … exist[ing] over the [Hermans'] property, permitting [the Mosses] to legally enter upon and use the aforesaid property."  Answer and New Matter, 2/2/22, at ¶ 6; *see also id.* at ¶¶ 14, 17, 23-24, 28, 38-39.  The Mosses denied causing any damage to the Hermans' property, *id.* at ¶¶ 17, 24, and averred that the Hermans have "wrongfully attempted to prohibit [them] from entering onto or using the easement or private right-of-way and have violated [their] rights and use and enjoyment of [the] property[,]" *id.* at 42.  The Hermans filed a reply to the Mosses' new matter, maintaining that there is no easement or right-of-way on their property.  Reply to New Matter, 2/22/22, at ¶¶ 7-9, 11-12.

The trial court subsequently conducted multiple hearings on the Hermans' request for injunctive relief, beginning on March 11, 2022, and concluding on January 10, 2024.  During those hearings, the Hermans called the following witnesses: John Taylor, a licensed professional surveyor; Joseph Gierlach, the director of public works for Neshannock Township; Donald Magno, a neighboring property owner; Ronald Wethli, a private investigator; Susan Wethli, wife of Ronald Wethli; Anthony Antonelli, a licensed general contractor; Samual Kamin, a licensed real estate attorney; Louise Geer Herman; and Richard Moss.  *See* TCO at 4; N.T., 3/11/22, at 9-10; N.T., 6/30/22, at 4, 18-19, 43, 49-50; N.T., 7/1/22, at 8; N.T., 10/4/22, at 52-54;

N.T., 10/20/22, at 4, 25; N.T., 1/10/24, at 85. Brenda Sebring[1] and Richard Moss were called as witnesses for the Mosses. *See* TCO at 5; N.T., 1/10/24, at 4. At the close of witness testimony, the court directed the parties to file briefs; both parties timely complied. *See* N.T., 1/10/24, at 108-09; *see generally* Hermans' Memorandum of Law, 4/18/24; Mosses' Memorandum in Support of Easement, 5/8/24. The trial court then heard oral argument on June 24, 2024. *See generally*, N.T., 6/24/24.

On October 25, 2024, the trial court entered an order declaring:

> [The Hermans] have met their burden of proof for injunctive relief in this matter, and the [Mosses] shall forthwith have no right, title or interest in the 50[-foot] strip of property owned by the [Hermans], including but not limited to any easement, and that the prior easement which existed, has been extinguished by adverse possession of the same by the [Hermans] due to their construction of the sewer line transversing their 50[-]foot strip of property to the Neshannock Township Sewer Department tap-in.

Order, 10/25/24, at 1 (single page). The trial court explained its decision at length in an accompanying opinion. *See* TCO at 4-22. In sum, it found that the Mosses successfully proved they had an easement by necessity[2] over the

---

[1] The trial court indicated that Brenda Sebring testified "as an expert witness" during the November 7, 2023 hearing. *See* TCO at 4. We are unable to locate notes of testimony for this hearing in the certified record.

[2] *See* TCO at 16 ("The three fundamental requirements for an easement by necessity are: 1) the titles to the alleged dominant and servient properties must have been held by one person; 2) this unity of title must have been severed by a conveyance of one of the tracts; and 3) the easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.") (citation omitted).

Hermans' property, but that the Hermans produced sufficient evidence to meet the requirements of adverse possession.[3] ***See id.*** at 22.

The Mosses filed a timely notice of appeal on November 18, 2024, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on January 14, 2025. On appeal, the Mosses present the following questions for our review:

A. May a court of common pleas enter permanent injunctive relief as the result of a petition for preliminary injunction and hearings thereon, absent an agreement or stipulation of the parties and with no trial on the merits?

B. May a court of common pleas broadly fashion injunctive relief that permanently decide[s] issues of title to real property, and permanently enjoins title to real property?

C. Will an underground sewer line installed by fee owners of real property upon an appurtenant access easement, where the sewer line is unknown for the requisite statutory period by the owners of the easement, be deemed to be such an obstruction of the appurtenant easement so as to cause its loss by adverse possession, where there is also no other conduct, obstruction, or act by the fee owners, inconsistent with the easement appurtenant that is visible, continuous, hostile[,] exclusive or adverse and occurring for the requisite period of twenty-one (21) years?

D. Does a court of common pleas possess subject matter jurisdiction when it determines and declares easement rights of the parties to the subject litigation over real property owned by a non-party that has not appeared before the court and over which there is no personal jurisdiction in the matter?

_____

[3] ***See*** TCO at 17 ("To claim title by adverse possession, … one must prove an (1) actual, (2) visible, (3) notorious, (4) exclusive and distinct, (5) hostile, and (6) continuous use for twenty-one years.") (citations omitted).

Mosses' Brief at 4 (cleaned up).

Before addressing the merits of the Mosses' claims, we consider the Hermans' assertion that this appeal should be quashed, because the appealability of an order implicates this Court's jurisdiction. ***See Knopick v. Boyle***, 189 A.3d 432, 436 (Pa. Super. 2018).

In their brief, the Hermans argue that the Mosses failed to file post-verdict motions pursuant to Pa.R.Civ.P. 227.1(c)(2), thereby failing to preserve their claims for appeal. Hermans' Brief at 16 (citing Pa.R.Civ.P. 227.1(c)(2) (providing "post-trial motions shall be filed within ten days after … the filing of the decision in the case of a trial without jury"); ***Chalkey v. Rush***, 805 A.2d 491, 496 (Pa. 2002) ("[Under Rule 227.1,] a party must file post-trial motions at the conclusion of a trial in **any** type of action in order to preserve claims that the party wishes to raise on appeal.") (emphasis in original)). However, the requirements of Rule 227.1 — which governs **post-trial** relief — are not applicable here, as there has not yet been a trial in this matter. As discussed further *infra*, the Mosses appeal from the trial court's order pertaining to the Hermans' request for a preliminary injunction. Their underlying claim for trespass remains to be litigated.

The Mosses contend, rather, that the October 25, 2024 order is an interlocutory order appealable as of right under Pennsylvania Rule of Appellate Procedure 311(a)(4). ***See*** Mosses' Brief at 1; ***see also*** Pa.R.A.P. 311(a)(4) (stating that an appeal may be taken as of right from "[a]n order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or

dissolves or refuses to dissolve an injunction"); ***Dovin v. Honey Brook Golf Club L.P.***, 325 A.3d 1282, 1287-88 (Pa. Super. 2024) ("Generally, for an order to be appealable, it must be (1) a final order…; (2) an interlocutory order appealable by right or permission…; or (3) a collateral order….") (internal quotation marks and citation omitted).

Regardless of whether the October 25, 2024 order constitutes a preliminary or permanent injunction — a question which is central to this appeal — we agree with the Mosses that it is appealable pursuant to Rule 311(a)(4). While this rule was originally designed to permit immediate appeals from preliminary injunctions, a party may also invoke Rule 311(a)(4) to appeal from a final injunction entered in a case in which claims for damages remain pending. ***See Thomas A. Robinson Family Ltd. P'ship v. Bioni***, 178 A.3d 839, 846 (Pa. Super. 2017) (citations omitted); ***see also id.*** (explaining that "because the unresolved damages claims prevented the injunction from being a final order under [Pa.R.A.P.] 341, the injunction was interlocutory and appealable under Rule 311"). Moreover, "[i]t is axiomatic that when a party seeks to take an interlocutory appeal as of right pursuant to Rule 311(a)(4), that post-trial motions are not required." ***Dovin***, 325 A.3d at 1291. Thus, we decline to quash this appeal.

Turning to the merits of the Mosses' claims, we note that, "in general, appellate courts review a trial court order refusing or granting a preliminary injunction for an abuse of discretion." ***Summit Towne Ctr., Inc. v. Shoe***

***Show of Rocky Mount, Inc.***, 828 A.2d 995, 1000 (Pa. 2003).[4]  Pursuant to this standard of review,

> we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below.  Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the trial court.

***Id.*** (citations and internal brackets omitted).

In ruling on a preliminary injunction request, a trial court has "apparently reasonable grounds" for granting such relief "if it properly finds that all of the essential prerequisites are satisfied."  ***Synthes USA Sales, LLC v. Harrison***, 83 A.3d 242, 249 (Pa. Super. 2013) (citations omitted).

> There are six essential prerequisites that a party must establish prior to obtaining preliminary injunctive relief.  The party must show: 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the inunction it seeks is reasonably suited to abate the offending activity; and 6) that a preliminary injunction will not adversely affect the public interest.  The burden is on the party who requested preliminary injunctive relief.

---

[4] "[T]he scope of review in preliminary injunction matters is plenary." ***Warehime v. Warehime***, 860 A.2d 41, 46 n.7 (Pa. 2004).

> ***Warehime***, … 860 A.2d at 46-47 (citation omitted). A decision addressing a request for a preliminary injunction thus requires extensive fact-finding by the trial court because the moving party must establish it is likely to prevail on the merits. ***See Summit***, … 828 A.2d at 1001…. Simply, the moving party must establish a *prima facie* right to relief. If the moving party's right to relief is unclear, then a preliminary injunction should not issue.

***Id.*** at 249-50 (internal quotation marks, footnote, and some citations omitted); ***see also Cnty. of Allegheny v. Commonwealth***, 544 A.2d 1305, 1307 (Pa. 1988) ("For a preliminary injunction to issue, every one of the prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others.").

In their first claim, the Mosses essentially argue that the trial court erred by entering a permanent injunction divesting their right, title, and interest in the 50-foot strip of land, *i.e.*, Ellgass Lane, and determining that any easement enjoyed by the Mosses has been extinguished by adverse possession, because the proceedings before the court were for **preliminary injunctive relief**. ***See*** Mosses' Brief at 17, 22-23; ***see also id.*** at 20-21 (asserting that Pa.R.Civ.P. 1531, which governs preliminary injunctions, does not authorize the entry of an order granting a permanent injunction and that fundamental fairness and due process are violated when a court improperly converts a preliminary injunction hearing to one granting permanent relief).

In considering the Mosses' argument, we remain mindful that the purpose of a preliminary injunction is "to preserve the status quo and prevent imminent and irreparable harm which might occur before the merits of the case can be heard and determined." ***Soja v. Factoryville Sportsmen's***

***Club***, 522 A.2d 1129, 1131 (Pa. Super. 1987). The status quo should be preserved by restoring the last peaceable, noncontested status which preceded the controversy. ***Id.*** (citation omitted). We are also cognizant that a preliminary injunction is considered an extraordinary remedy and may only be granted if the plaintiff has established a clear right to the relief sought. ***Id.*** (citation omitted).

Pennsylvania Rule of Civil Procedure 1531 sets forth the procedural steps which must be followed when a preliminary injunction is sought. Ordinarily, a preliminary injunction may be issued only after written notice and hearing. ***See*** Pa.R.Civ.P. 1531(a). However, subsection (a) provides for the issuance of a hearing without notice or a hearing where the court is satisfied that immediate and irreparable injury will be sustained before notice can be given or a hearing held. ***Id.*** In the event that an *ex parte* preliminary injunction is issued, the trial court is required to conduct a hearing on the continuance of the injunction "within five days or within such time as the parties agree or as the court upon cause shown shall direct." Pa.R.Civ.P. 1531(d). "After a preliminary hearing, the court shall make an order dissolving, continuing or modifying the injunction." Pa.R.Civ.P. 1531(e); ***see also Pa. Interscholastic Athletic Ass'n, Inc. v. Greater Johnstown School Dist.***, 463 A.2d 1198, 1199 (Pa. Cmwlth. 1983) (stating that where a trial court has issued an *ex parte* preliminary injunction, Rule 1531(e) restricts

the trial court to "dissolving, continuing or modifying" the preliminary injunction previously entered).[5]

The case then proceeds for a final hearing on the merits. "This final disposition is independent of the court's prior determination as to the plaintiff's right to preliminary relief." *Soja*, 522 A.2d at 1131. For instance, "[t]he request for a preliminary injunction turns on the presence of imminent, irreparable harm. However, even if such a threat is not present, the plaintiff may still be entitled to prevail on the merits of his claim and obtain a final injunction." *Id.* at 1133. Thus, it is evident that separate standards govern a request for a preliminary injunction and a request for permanent injunctive relief. The right to preliminary relief is based on the imminence of irreparable harm, whereas a permanent injunction is warranted to prevent a legal wrong for which there is no adequate redress at law. *Id.* at 1131; *see also WellSpan Health v. Bayliss*, 869 A.2d 990, 995 (Pa. Super. 2005) ("[I]n contrast to a preliminary injunction, a permanent injunction does not require a showing of irreparable harm or the need for immediate relief. Rather, the plaintiff must show that an actual and substantial injury has occurred and/or is threatened in the future.") (citations omitted).

Consequently, Pennsylvania appellate courts have consistently held that "it is improper for the trial judge to treat a hearing on an application for a

---

[5] "Although decisions of the Commonwealth Court are not binding on this Court, they may provide persuasive authority." *Barrett v. M&B Billing, Inc.*, 291 A.3d 371, 376 n.4 (Pa. Super. 2022) (citation omitted).

preliminary injunction as a final hearing on the merits and as a basis for a final decree **unless so stipulated by the parties**.” ***Soja***, 522 A.2d at 1132 (emphasis added); ***see also Santoro v. Morse***, 781 A.2d 1220, 1229 (Pa. Super. 2001); ***Naus & Newlyn, Inc. v. Mason***, 441 A.2d 422, 424 (Pa. Super. 1982); ***Lindeman v. Borough of Meyersdale***, 131 A.3d 145, 151-52 (Pa. Cmwlth. 2015) (citations omitted). We have reasoned:

> Certainly, it is unfair for a court to determine an action based upon a different legal standard than that by which the litigants believed themselves to have been governed. It is also unfair to reach a final decision after a preliminary proceeding. A litigant may not prepare as completely as he would [have] had he realized that he was not going to receive a second chance to present his case.

***Soja***, 522 A.2d at 1133; ***see also Warehime***, 860 A.2d at 46 (“The mere holding of hearings with regard to a motion for a preliminary injunction does not somehow morph that motion into a request for a permanent injunction.”); ***Berger By and Through Berger v. West Jefferson Hill Sch. Dist.***, 669 A.2d 1084, 1086 (Pa. Cmwlth. 1995) (explaining that, unless the parties stipulate to the contrary, a court may not integrate proceedings involving a preliminary injunction and a request for a final injunction, because each of these proceedings is governed by separate and distinct standards).

Applying the foregoing principles and rules of procedure to the case *sub judice*, it is apparent that the multiple evidentiary hearings held below, as well as the oral argument on June 24, 2024, were pertaining to the Hermans’ request for a preliminary injunction. Rule 1531 requires a hearing on the continuance of an *ex parte* preliminary injunction and, after such hearing,

limits the court to entering an order dissolving, continuing or modifying the injunction. *See* Pa.R.Civ.P. 1531(d), (e). The purpose of the preliminary injunction is to restore the parties' status quo and to prevent imminent and irreparable harm pending the outcome of the underlying case, which is then litigated **after** the grant or denial of the preliminary injunction. *See Soja*, *supra*. There is no dispute that the Hermans' filed a petition on December 22, 2021, seeking preliminary injunctive relief and that the trial court granted their petition *ex parte*. Pursuant to Rule 1531, the trial court scheduled a hearing on the preliminary injunction for January 5, 2022, which was ultimately held on March 11, 2022, and continued numerous times through January 10, 2024, to provide the parties with sufficient time to present their evidence regarding the preliminary injunction. The trial court then permitted the parties to brief and argue their positions before entering its decision on October 25, 2024.

Based on our review of the record, it is also evident that the parties were proceeding with the understanding that the issue before the trial court was the Hermans' request for a preliminary injunction. For instance, the Hermans' memorandum filed prior to oral argument is replete with evidence that they were arguing for preliminary injunctive relief pending the outcome of their underlying trespass action. *See, e.g.*, Hermans' Memorandum of Law at 22 (listing the six essential prerequisites for obtaining a preliminary injunction); *id.* at 23 (stating that the Hermans are "seeking a preliminary injunction"); *id.* at 37 (noting that in order to sustain a preliminary injunction,

a plaintiff's right to relief must be clear and the need for relief must be immediate); *id.* at 38 (arguing for the restoration of the status quo and to prevent any further damage to the property); *id.* at 43 (requesting that the trial court grant "preliminary injunctive relief"). Likewise, the Mosses argued in their memorandum why "[a] preliminary injunction should not be granted[.]" Mosses' Memorandum in Support of Easement at 2.

During oral argument, the Hermans' counsel stated to the court:

And, remember, **this isn't about the ultimate issue in this case. This is about whether or not we need an injunction to stop any further proceedings while we litigate the underlying case....** And we haven't litigated the issue with regards to – in trial, whether or not there is an easement.

N.T., 6/24/24, at 36-37 (emphasis added). In closing, he argued:

So it is the position of the [Hermans] that the court should grant the injunctive relief which is the subject of these hearings, that there will be **immediate and irreparable harm**, irreparable harm to this property if he's allowed to proceed because he will destroy a sewer line to a house, he will create all kinds of other problems with regards to flooding in the area for the other people involved, and he doesn't have an easement; it's been extinguished. So I believe that we have met our burden to prove that injunctive relief is appropriate by a preponderance of the evidence.

*Id.* at 48-49 (emphasis added); *see also WellSpan Health*, 869 A.2d at 995 (noting that a permanent injunction does not require a showing of irreparable harm or the need for immediate relief); *Soja*, 522 A.2d at 1131 ("The request for a preliminary injunction turns on the presence of imminent, irreparable harm.").

- 15 -

Nevertheless, the trial court issued an opinion stating that the case was before the court "following multiple hearings and argument on the [Hermans'] request for a **permanent injunction** following [their] filing of a complaint for declaratory judgment[6] and injunctive relief." TCO at 1 (cleaned up; emphasis added); *see also id.* at 4 (stating that the court conducted multiple hearings on the Hermans' request for a **permanent injunction**). Moreover, the trial court indicated that it considered only the following four factors in arriving at its decision on injunctive relief:

1. Is the injunction necessary to prevent irreparable harm to the [Hermans]?

2. Will the injunction restore the parties to their status quo as it existed before the alleged wrongful acts of the [Mosses]?

3. Will greater injury result from a refusal to grant the injunction than granting the injunction?

4. Is the movant[']s right to injunctive relief clear?

*Id.* at 4; *see also id.* at 20-22 (explaining the trial court's analysis of these four factors). Notably absent from the trial court's analysis are the questions regarding whether the injunction sought "is reasonably suited to abate the offending activity," and whether a preliminary injunction will "adversely affect the public interest[,]" which are prerequisites to granting a preliminary

---

[6] The Hermans' complaint consists of a single cause of action for trespass and seeks relief in the form of a permanent injunction and monetary damages. *See* Complaint at ¶¶ 22-28. According to the Hermans, they filed a declaratory judgment action at a separate docket number, which has not been consolidated with the instant matter. Hermans' Reply Brief, 7/10/24, at 11-12.

injection. **_Warehime_**, 860 A.2d at 47; **_see also Cnty. of Allegheny_**, 544 A.2d at 1307 ("For a preliminary injunction to issue, every one of the prerequisites must be established….").

Additionally, the trial court's October 25, 2024 order broadly declared that the Mosses "shall forthwith have no right, title or interest in the 50[-]foot strip of property owned by the [Hermans,]" and that an easement had existed, but that said easement had been distinguished by adverse possession. Order, 10/25/24, at 1 (single page). These declarations are permanent in nature and go to the merits of the underlying trespass action. **_See Oberholzer v. Galapo_**, 274 A.3d 738, 746 (Pa. Super. 2022) ("A permanent injunction is a permanent order requiring an individual or entity to comply with mandatory conditions imposed by the court."); **_Naus_**, 441 A.2d at 212 (determining that the trial court's order constituted a permanent injunction where the relief granted went beyond merely preserving the status quo). The law is clear that, absent a stipulation by the parties to treat the preliminary injunction proceedings as a final hearing on the merits and basis for a permanent injunction, such relief is improper. **_See Santoro_**, **_supra_**; **_Soja_**, **_supra_**; **_Naus_**, **_supra_**; **_see also Big Bass Lake Cmty. Ass'n v. Warren_**, 950 A.2d 1137, 1148-49 (Pa. Cmwlth. 2008) (determining that where the parties' discussion on the record regarding the scope of the hearing did not memorialize an agreement between the parties to make the preliminary injunction hearing the final hearing on the merits, the trial court erred in granting a permanent injunction).

Based on our review of the record, we discern no evidence of such a stipulation between the Hermans and the Mosses. While the Hermans seem to suggest the existence of a stipulation, they point solely to the following colloquy that took place during oral argument:

> [THE MOSSES' COUNSEL]: Mr. Herman does have a declaratory judgment action that is filed. It's like … it's right behind this because when he wasn't getting anywhere with this case he immediately filed that.
>
> [THE COURT]: Is that a separate case number?
>
> [THE MOSSES' COUNSEL]: Yes. Yes, a separate case number. And I felt that I could get all the testimony in in one fell swoop and save my client the continued jumping over the hoops to get to this issue.
>
> So I think that we can get to this issue, and I asked for equity because I think the court can make a decision and not grant the injunction and to give an opinion that there is a valid easement that has not been terminated by adverse possession.

Hermans' Brief at 18-19 (cleaned up); *see also* N.T., 6/24/24, at 55.

At best, the foregoing statement merely reflects a desire on the part of the Mosses' counsel to treat the hearing as a final hearing on the merits. The Hermans fail to point to any evidence that they agreed to the same. *See Commonwealth v. Beshore*, 916 A.2d 1128 (Pa. Super. 2007) (noting that it is not our job to scour the record to find evidence to support an argument). In fact, the Hermans addressed the above comments made by Mosses' counsel in a reply brief that they filed after the oral argument. Therein, the Hermans stated that during the June 24, 2024 hearing, the Mosses' counsel "requested for the first time that the court … make a final judgment on the complaint in

- 18 -

this matter and rule on the declaratory judgment action filed at a separate [docket] number." Hermans' Reply Brief at 11 (cleaned up). The Hermans argued:

> These hearings were held relative to injunctive relief. The [Hermans] did not present[,] nor w[ere they] put on notice[,] … that all the necessary proof to prove the actual action would be presented before [the trial] court. The record does not reflect why the [Hermans] would assume otherwise. More importantly[,] discovery was never had in this matter and there are questions which could be further resolved with regards to the issues before this honorable court with discovery. … [T]here was no bench trial in this matter[,] … discovery was not accomplished[,] and the [Hermans] would be gravely prejudiced if the court at this late stage where hearings were conducted on injunctive relief made final determinations on all of the issues set forth before the court.

*Id.* at 11-12 (cleaned up); *see also id.* at 13 (acknowledging that there were numerous hearings in this matter, but stating that the testimony presented at those hearings was solely for the purpose of an injunction); *id.* (requesting that the court grant the injunctive relief sought by the Hermans); Petition at 4 (seeking a preliminary injunction prohibiting the Mosses from entering onto the Hermans' property and from doing anything to change or alter said property). Thus, we deem the Hermans' argument regarding the existence of a stipulation disingenuous.

We recognize that the trial court was required to determine if the Hermans produced substantial, credible evidence in support of their trespass claim, because it could only grant them preliminary injunctive relief if it was satisfied that they have a clear right to relief. *See Santoro*, 781 A.2d at

- 19 -

1229.[7]   It was thus entirely reasonable and proper for the trial court to consider testimony regarding the existence of an easement and/or adverse possession.  *See id.*; TCO at 4-22.  However, we emphasize that, at the preliminary injunction stage, the merits of the underlying claims must still be litigated.  *Santoro*, 781 A.2d at 1229.  The plaintiff is not entitled at this juncture to the relief that may ultimately be awarded in a civil trial.  *See id.* at 1230 (vacating the injunction to the extent that the relief awarded exceeded the proper scope of relief in a preliminary injunction proceeding); *see also Warehime*, 860 A.2d at 46 (rejecting the Superior Court's reasoning that since the trial court held extensive hearings, its denial was in the nature of a denial of permanent injunctive relief; noting that Rule 1531 specifically contemplates that hearings may be held on requests for preliminary injunctions).

Accordingly, we conclude that the trial court improperly granted permanent injunctive relief on a preliminary injunction petition.  *See Santoro*, *supra*; *Soja*, *supra*.; *see also Pa. Interscholastic Athletic Ass'n*, 463 A.2d at 1200 (concluding that the trial court's order granting a permanent injunction following its entry of an *ex parte* preliminary injunction was not authorized by Pa.R.Civ.P. 1531(e)).  We vacate the trial court's October 25,

---

[7] To establish a clear right to relief on a claim for trespass, "a plaintiff must prove an intentional entrance upon land in the possession of another without a privilege to do so." *Kennedy v. Consol Energy Inc.*, 116 A.3d 626, 636 (Pa. Super. 2015) (citations omitted).

2024 order and remand this matter for further proceedings consistent with this memorandum.[8, 9]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/02/2025

---

[8] We caution that in the event the trial court concludes that the Hermans have met their burden of proof for the granting of a preliminary injunction, such relief should be narrowly tailored to abate the injury. ***See Big Bass Lake***, 950 A.2d at 1144-45; ***see also Santoro***, 781 A.2d at 1230 ("A preliminary injunction must be crafted so as to be no broader than is necessary for the petitioner's interim protection.").

[9] In light of our decision to vacate the trial court's order granting permanent injunctive relief, we need not address the remaining issues raised by the Mosses, which only further challenge said order. Notwithstanding, we feel compelled to comment on the Mosses' fourth issue, which implies that the Hermans failed to join an indispensable party and implicates the trial court's subject matter jurisdiction. ***See Orman v. Mortgage I.T.***, 118 A.3d 403, 406 (Pa. Super. 2015). We note that "a party is indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." ***Id.*** (cleaned up). "If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation." ***Id.***; ***but cf. id.*** at 407 ("[A]ll parties who claimed title to the property [in a quiet title action] must be joined as indispensable parties."); ***id.*** (stating that all tenants by the entireties must be joined in actions intended to affect the title to their property). Here, the Hermans are only seeking an injunction to enjoin the Mosses from entering upon their property and monetary damages against the Mosses. They do not seek to quiet title or any other declaration as to the title of real property that could potentially affect the interests of an alleged third party.